THE IRON SILVER MINING CO. v. PETER CAMPBELL
ET AL.

1. GOVERNMENT PATENT—PRESUMPTIONS IN FAVOR OF.—There can be no higher evidence of title than a patent from the United States. In favor of the validity and integrity of such an instrument it must be presumed that all antecedent steps necessary to its issuance were duly taken.

2. OFFICERS OF LAND DEPARTMENT—DECISIONS.—It is only when the officers of the land department have misconstrued the law applicable to the facts before them in a given case, and thereby have denied to parties rights to which they are entitled under a correct construction, or when misrepresentations and fraud have been practiced that courts can in a proper proceeding interfere and refuse to give effect to their action.

3. FOLLOWING VEIN BEYOND SIDE LINES — BURDEN OF PROOF. — A patent gives a *prima facie* right to the patentees to the exclusive possession of the premises covered by the patent.  When others rely upon a right to follow into the patented territory a vein, which they claim has its top or apex outside the premises covered by such patent, the burden of establishing such right rests upon them.

*Appeal from District Court of Lake County.*

THIS is an appeal from the judgment of the Lake county district court in an action for the possession of mining prop-

erty in the nature of an action of ejectment, and for damages. The writ was instituted by appellees, Peter Campbell *et al.*, against appellant, the Iron Silver Mining Co., to recover possession of the Louisville mining lode claim. The plaintiffs derive through a government patent, and after alleging the entry and ouster by the defendant, charge that, " the said defendant company asserts the right to expel the plaintiffs and their workmen from said shaft and claim, and to mine, extract, remove, sell and dispose of the valuable ores aforesaid, upon the claim and pretense that the vein, lode, or deposit of mineral underlying the said Louisville claim, and into which the said plaintiffs' shaft penetrated, is, in fact, the Iron and Iron Hat lode claims. That the said defendant company claim to own and possess the said Iron and Iron Hat claims. They assert that there is therein disclosed a lode, vein, or deposit of valuable mineral with its top, end, or apex within the boundary lines of the said claims extending downward vertically ; and that, from the top, end, or apex thereof, the said vein or lode extends continuously in its course downward in an easterly direction beyond the side lines of the said Iron or Iron Hat claims, and into and through the said Louisville claim, and that the body of mineral penetrated by the said vein or lode, having its apex as aforesaid, is the identical vein reached and penetrated by said Louisville shaft. But the plaintiffs show that the lode or vein of mineral disclosed in said Iron and Iron Hat claims, or either of them, is an almost flat deposit of mineral, with a dip of not more than fifteen degrees from the horizontal to the east ; that the same is common to said California mining district, and is almost uniformly found between a foot wall of limestone and a hanging wall of porphyry ; that whenever the hanging wall of porphyry is penetrated, the contact with the same with the foot wall of limestone is found. At and within this contact the mineral is usually found.

That the said body or vein of mineral extends beyond the side lines of the said Iron and Iron Hat claims, both east-

erly and westerly, and the top, end or apex is not found within them.

And the plaintiffs further show that there is no continuous or unbroken body or vein of mineral from either the said Iron or Iron Hat claims; that there is a totally barren line of said contact extending from a distance of at least two hundred feet between the vein or lode of mineral found in the said last named claims; and the body of mineral in the said Louisville claim is a separate and distinct body vein or lode from that found in the said Iron or Iron Hat claims, and has not its top, end or apex within said claim.

The defendants answered and the cause was tried to a jury. The following facts were either conceded at the trial or established without substantial conflict. The appellant is shown to have been at the time the owner in fee of two mining claims, known as the Iron and Iron Hat locations. It is also the owner of another claim called the Codfish Balls, which extends in the same direction and which adjoins the Iron Hat claim on the west. It also owns a claim described in the complaint and called the Porphyry, which lies immediately to the east of and adjoining the Iron lode, its end lines being practically a continuation of the end lines of the Iron claim to the east.

The Louisville lode, the property of appellees, is a claim 300 by 1500 feet in dimensions, located practically east and west, its west end line being nearer to the property of the appellant than any other portion of it, but that line being more than a thousand feet east of the nearest portion of the Iron lode.

The appellant company began operations upon the Iron mine near its north end line and followed as it claimed a contact vein from that point eastwards indefinitely, such vein, however, consisting, as claimed by the appellees, for a great part of the distance simply of a line of contact or jointure between two different formations, to wit: porphyry and limestone. The appellant ran its workings practically 1700 feet from the Iron mine easterly, descending into the

earth at an angle of 10 to 12 degrees below the horizontal until it came beneath and intersected the bottom of the shaft of the appellees on the Louisville claim. It excluded the appellees from the possession of such workings as they had made at this point. The appellant attempted to justify the trespass of which the appellees complained by asserting that it was the owner in fee of a continuous unbroken vein of metalliferous bearing ores, the apex of which was situated within its patent claims and which in its downward course extended outside of and beyond its vertical side lines and entered the premises claimed by appellees under their Louisville patent, and that it was lawfully entitled to follow such vein and extract the mineral therefrom, to be found within the vertical boundaries of the appellees' mine. The apex of this vein was asserted to enter the Iron claim at its north end line, after which it proceeded in a northwesterly direction, leaving the Iron claim and passing out of its west side line into the Iron Hat claim at a point five or six hundred feet south of its end line ; that it continued in the same direction diagonally across the Iron Hat claim into the Codfish Balls claim, the side lines of which it also crossed in a similar direction.

Upon the trial appellees offered the patent of the Louisville claim, together with a deed from the patentees to plaintiffs, and rested. A judgment of nonsuit was then moved and overruled. Thereupon a trial was had, resulting in a verdict and judgment for the plaintiffs.

Mr. L. S. DIXON, Mr. G. G. SYMES and Mr. FRANK W. OWERS, for appellant.

Messrs. PATTERSON & THOMAS, for appellees.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The trial in the district court was a protracted one. Upon this trial many exceptions were reserved to the rulings of the

court and upon these exceptions numerous errors have been assigned in this court. Fortunately, however, we are relieved from reviewing all errors assigned save one, the other assignments having been expressly waived by counsel at the oral argument recently had before this court.

Plaintiffs relying upon the patent, at the trial introduced the same in evidence together with their deed from the patentees, and rested their case. Thereupon the defendant interposed a motion for a nonsuit which was overruled, to which ruling an exception was duly reserved. The question upon which an opinion is desired may be determined in connection with this ruling. Coupled with the statement made in the complaint in support of the action for possession and damages, are certain allegations made for the purpose of obtaining equitable relief. The motion for a nonsuit is predicated upon the latter allegations and upon the following provision of the United States statutes. "The locators of all mining locations * * * shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically although such veins, lodes or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. * * *"

The argument in brief is this : Under the statute it is said that the patent conveys only such veins, lodes or ledges as have their tops or apexes within the exterior lines of the patented premises. Plaintiffs, as it is claimed, have admitted by the pleadings that the vein upon which a patent to the Louisville location was secured has no top or apex within the boundaries of such location, therefore, it is argued that the patent is either void, or that, at best, it conveys no right to the mineral in controversy. In other words, that plaintiffs by their admissions have stated themselves out of court notwithstanding their patent.

Defendants do not claim the evidence to be sufficient to

show that they themselves have the top or apex of any vein which will entitle them to go within the territory embraced in the Louisville patent.   Their claim in this regard is based upon the position of the parties as plaintiffs and defendant in this suit.   The action being in the nature of an action of ejectment, plaintiffs, it is urged, must recover, if at all, upon the strength of their own title and not upon the weakness of that of the defendant.

In determining the question thus raised we will first consider the force and effect of the patent itself, and then the nature of the allegations of the complaint relied upon as admissions against plaintiffs.   There can be no higher evidence of title than a patent from the United States government. In favor of the validity and integrity of such an instrument we must presume that all antecedent steps necessary to its issuance were duly taken.   See *Anderson et al. v. Bartels*, 7 Colo. 256, and cases cited.

Should we concede then for the purpose of the argument that under the statute no patent to a lode claim can be lawfully acquired unless such vein has its top or apex within the exterior lines of the location, then in this case the presumption obtains that the Louisville vein does have a top or apex within such territory.   This presumption is certainly conclusive against the defendant, unless the plaintiffs have admitted the contrary, as the answer contains no averments against the patent.

In *Quinby v. Conlan*, 104 U. S. 420, it is said: "It would lead to endless litigation, and be fruitful of evil, if a supervisory power were vested in the courts over the action of the numerous officers of the land department, on mere questions of fact presented for their determination.   It is only when those officers have misconstrued the law applicable to the case, as established before the department, and thus have denied to parties rights which upon a correct construction would have been conceded to them, or where misrepresentations and fraud have been practiced, necessarily affecting their judgment, that the courts can, in a proper proceeding,

interfere and refuse to give effect to their action. On this subject we have repeatedly and with emphasis expressed our opinion, and the matter should be deemed settled." In *Smelting Co. v. Kemp*, 104 U. S. 630, it was held that:

1. "A patent, duly signed, countersigned, and sealed for public lands which, at the time it was issued, the land department had, under the statute, authority to convey, cannot be collaterally impeached in an action at law; and the finding of the department touching the existence of certain facts, or the performance of certain antecedent acts, upon which the lawful exercise of that authority may in a particular case depend, cannot in a court of law be questioned."

2. "If, in the issuing of a patent, the officers of that department take mistaken views of the law, or draw erroneous conclusions from the evidence, or act from either imperfect views of duty or corrupt motives, the party aggrieved cannot set up such matters in a court of law to defeat the patent, he must resort to a court of equity, where he can obtain relief, if his rights are injuriously affected by the existence of the patent, and he possesses such equities as will control the legal title vested in the patentee. A stranger to the title cannot complain of the act of the government in regard thereto."

In *Seymour v. Fisher*, 16 Colo. 188, it was held that no proposition with reference to mineral land is better established than that such land, where held under a valid location, is no longer subject to exploration and entry, and that a stranger going thereon for the purpose of interfering in any way with the locator's possession is a trespasser. If this be true, prior to a patent *a fortiori*, does the rule apply to patented property?

Appellants strongly rely upon the case of *Patterson v. Hitchcock*, 3 Colo. 533. The only point decided in that case, which has any bearing upon the question here presented, has reference to the departure of a vein from the side lines of the location. The court holding that if the vein does so depart or terminate at any point within the location, the location

beyond such point is defeasible if not absolutely void before patent. What the rule would be after patent is not stated; that it might be different is clearly implied by the language of the opinion. In the course of its reasoning the court said: "To arrive at the intention of the legislature we must consider the act as a whole, accepting the broader or doubtful expressions of one section as limited or explained by other sections."

This rule will be found exceptionably valuable in the case at bar. Reading from the statute the section relied upon in connection with other sections of the act and we find, 1st: That congress has expressly provided for the exploration and purchase of all lands belonging to the United States containing valuable mineral deposits. 2d: That two methods only are provided by which title to claims containing what are usually denominated the precious metals, may be acquired. The one applying to veins or lodes of quartz or other rock in place and the other to placer claims. *Reynolds v. The Iron Silver Mining Co.*, 116 U. S. p. 687, is authority for saying that the statute in reference to placer claims was not intended to apply to veins like the ones found in the Louisville location. Such veins must, therefore, be located under the first provision if at all. And under this provision the patent to the Louisville location was in fact issued.

It is claimed, however, that plaintiffs by the allegations of their complaint have shown affirmatively that they have no right to the vein in controversy. We are of the opinion that the language of the complaint will not warrant the construction sought to be placed upon it by appellant.

In the complaint, after an allegation of the citizenship of plaintiffs and one of the corporation of the defendant company, it is stated: "That sometime during the month of February, A. D. 1879, one Albert J. Johnson, being a citizen of the United States, over the age of twenty-one years, entered upon those premises hereafter described, the same constituting a part and parcel of the unappropriated public domain of the United States, and began to prospect and explore the

same for valuable mineral deposits ; that by means of a shaft
sunk to the depth of more than ten feet from the lowest part
of the rim thereof at the surface, the said Johnston cut, dis-
covered, and disclosed a vein, lode, or ledge of mineral in
rock in place, and carrying silver and other metals."

Afterwards, and near the close of the pleading, the state-
ments relied upon by the defendant as admissions appear.
These allegations when abstracted are :—1st, A statement
upon information and belief of the claim of defendants. It
would be manifestly improper to assume for any purpose that
the plaintiffs here admit the truth of those matters which
they allege upon information and belief as the basis of the
claim to the vein advanced by the defendants.   2d, A state-
ment by the plaintiffs that the deposit of mineral in the de-
fendant's claim is nearly flat, with a dip of not more than
fifteen degrees from the horizontal, and that this formation
is common to the California district, the mining district in
which both plaintiffs' and defendants' claims are situated.
Here again it would require a strained construction of the
language employed to hold, that it is equivalent to an admis-
sion that plaintiffs had no top or apex of the vein within the
side lines of their location.   3d, An allegation of the direc-
tion and extent of the veins of the defendant company and
that no top or apex existed within the exterior lines of such
claims.   4th, A statement of the want of continuity of the
veins belonging to the defendant company.   These allega-
tions, when considered singly or together, lack very much of
being an admission that plaintiffs have no top or apex with-
in the exterior lines of their claim.

The plaintiffs by the introduction of their patent estab-
lished a *prima facie* right to the possession of the premises
in controversy, and we are unable to find any admission in
the complaint sufficient to overcome such *prima facie* show-
ing.   Appellants, relying upon a claim of right to follow their
vein into the territory included within the side lines of plaint-
iffs' claim were properly held to have had the burden of prov-
ing such claim.

There was no error in overruling the motion for a nonsuit, and as this is the only error relied upon, the final judgment for the plaintiffs will be affirmed.

*Affirmed.*