PEABODY GOLD-MIN. CO. v. GOLD HILL MIN. CO.

(Circuit Court, N. D. California.  November 6, 1899.)

No. 12,699.

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

    A trespass upon a mining claim does not raise a federal question, nor does a claim of right based upon a mere location of a mining claim, as against a patent regularly issued by the land department, under authority of law, for the land covered by such location.[1]

2. MINING CLAIMS—VALIDITY OF PATENT—AREA INCLUDED IN SINGLE PATENT.

    A patent for a lode mining claim, issued under the act of May 10, 1872, is not restricted to the surface ground which may be taken under a single location, and the fact that a patent includes ground extending more than 300 feet on either side of the lode or vein does not render it invalid on its face as to the excess.

On Demurrer to Bill.

A. H. Ricketts, for complainant.

E. W. McGraw, for respondent.

MORROW, Circuit Judge.  This is an action to quiet the title of the complainant to two certain mining claims situated in the county of Nevada, in the state of California; to declare null and void a certain patent issued by the United States to the respondent to the extent that it covers complainant's said claims; and to restrain the respondent from asserting any claim to the premises in controversy.  The complainant and respondent are corporations organized under the laws of the state of California.  It appears from the bill that the patent under which the respondent claims title to the premises was issued by the United States on the 9th day of August, 1883, for 1,263.2 linear feet of the Gold Hill quartz mine, vein, lode, or deposit, with an irregular superficial area, containing 14.71 acres of land.  It is alleged in the bill that the complainant is in possession and entitled to the possession of certain described premises:  First, a mining claim known as the "Peabody Quartz Lode Mining Claim," which is specifically described, and appears to be to the northwest of the Gold Hill quartz mine and outside its boundaries as described in respondent's patent; second, the Suum Quique mining claim, located by Hartwig Von Cleve on the 7th day of September, 1898, and consisting of 270 linear feet of the Suum Quique vein or lode, with 300 feet on each side of the center of the vein, and situated westerly of and adjoining the said Peabody quartz lode mining claim;  third, the Crœsus mining claim, located by Hartwig Von Cleve on the 7th day of September, 1898, and consisting of 400 linear feet of the Crœsus vein or lode, with 300 feet on each side of the center of said vein, and situated westerly of and adjoining said Peabody quartz lode mining claim. Nearly all of the second claim and a portion of the third claim appear to be within the boundaries of the Gold Hill quartz mine, as

[1]As to jurisdiction of cases involving federal questions, see note to Bailey v. Mosher, 11 C. C. A. 308, and, supplementary thereto, note to Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.

described in respondent's patent. But the bill alleges that the Peabody quartz mine, the Suum Quique mining claim, and the Crœsus mining claim constitute but one parcel of mining ground, and one property. It is further alleged, in substance, that said mining ground—that is to say, the whole property—contains valuable mineral deposits and vein, rock, and earth bearing gold and other precious metals, and that the said deposits and veins constitute the sole value of said mining ground; that the complainant is now engaged in mining and developing the said mining ground, lands, and premises, and extracting therefrom the said ores and minerals, and had constructed at great expense, and had and has thereon, mines, drifts, cuts, excavations, and other works necessary for and adapted to the work of mining and developing the said ground; that the respondent, the Gold Hill Mining Company, on the 24th day of September, 1898, entered upon the mining ground claimed by the complainant for the purpose of mining the said ground, and extracting the ores therefrom, and made and excavated certain drifts and openings into and under and upon said premises, and has intruded and trespassed upon the same, and has dug up and extracted, taken out of, and removed from said mining ground, and converted to its own use, large quantities of the mineral deposits, earth, rock, and ores therein bearing gold and other precious metals, of the value of $2,000; that the respondent threatens to continue the acts of intrusion and trespass alleged in the complaint, and to continue to dig out, extract, and remove from said ground the rock and ores bearing gold and other precious metals, to the great and irreparable injury of the complainant. It is further alleged that this suit arises under the constitution and laws of the United States; that the respondent claims some right, title, or interest adverse to the complainant in the premises under or by virtue of the patent issued to the respondent by the United States for the Gold Hill mining claim; that the suit involves the construction of the act of congress approved May 10, 1872, and that a true construction of that act limits the right of the land department to issue a patent for a mining claim to surface ground 300 feet on each side of the middle of the vein or lode patented, and the complainant will contend at the trial of the case that a patent issued by the land department of the government for surface ground in excess of such width is void as to such excess, and that respondent's patent is void as to all that portion of the surface ground on the easterly side of the lode or vein described in the patent for the Gold Hill mining claim in excess of 300 feet from the center of the lode or vein; that the complainant will contend at the trial of the case that the area in excess of such width allowed by law belongs to the complainant by virtue of valid and subsisting mining locations and claims thereon, to wit, the Crœsus mining claim or location and the Suum Quique mining claim or location, by virtue of a conveyance from the locator and discoverer of said mining claims and locations.

To this bill of complaint the respondent has interposed the following demurrer:

"That it appears on the face of said bill of complaint that the said complainant is not entitled in equity to any such relief as is thereby sought and prayed for against this respondent in respect to the said Suum Quique and Crœsus lodes or veins, in this, to wit: That it appears from said bill of complaint that the said Suum Quique and Crœsus lodes or veins are within the patented surface boundaries of the Gold Hill mine, owned by respondent, and no facts are stated in said bill of complaint which tend to show that said patent was not regularly issued, and is not valid, and did not vest in this respondent absolute title to all the mining property therein described: and that it does not appear from said bill of complaint that said patent was founded on a single mining location, or that it was not founded on many and separate and distinct locations, covering, in the aggregate, all the lands described in said patent, and each valid and effectual under the mining laws of the mining district in which said lands are situate. That as to the relief sought on behalf of said Suum Quique and Crœsus lodes or veins this court has no jurisdiction of the said bill of complaint, for the reason that it nowhere appears therein that the value of said Suum Quique and Crœsus lodes or veins is as much as two thousand dollars, or that they are of any value whatever. And this respondent further demurs to so much of said bill of complaint as refers to said Peabody quartz lode mining claim, and for cause of demurrer showeth that this court has no jurisdiction thereof, for the reason that it does not appear from said bill of complaint that, as far as said Peabody quartz lode mining claim and the alleged trespass thereon, any federal question whatever is involved, nor are there any facts stated which show jurisdiction in this court on any other ground."

The allegations of the bill of complaint limit the controversy in this action preliminarily to the two locations made by Von Cleve on September 7, 1898, designated as the "Suum Quique" and the "Crœsus" mining claims, or so much of said claims as are located within the boundaries of the claim of the respondent under its patent from the United States issued August 9, 1883, for the Gold Hill mining claim. But the complainant alleges that it has possession also of the Peabody mining claim. This claim is, however, outside of the boundaries of the Gold Hill mining claim, and is, therefore, not in conflict with respondent's claim. These three claims are united in the bill of complaint as one property, and the trespass is alleged, and relief prayed for, with respect to the mining ground constituting the whole property, and not with respect to any one claim.

Under these allegations of the bill of complaint, evidence might be offered by the complainant showing mining operations of the respondent within the boundaries of its own Gold Hill mining claim where the same would come also within either of the two designated locations claimed by the complainant, or evidence might be offered showing operations on the part of the respondent on these two locations outside of its own claim, or evidence might be offered showing operations on the part of the respondent within the boundaries of the Peabody claim. Now, it is clear that, with respect to the alleged trespass on these different localities different questions might arise, and not all federal questions. As, for instance, a trespass by the respondent upon the ground of the Peabody claim would not raise a federal question. Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 29 C. C. A. 462, 85 Fed. 867; Id., 35 C. C. A. 1, 93 Fed. 274. Nor would a trespass upon the part of the respondent upon the ground of the two locations claimed by the complain-

ant outside of its own claim raise a federal question. Whether the operations of the respondent within the boundaries of its own claim, and also within the limits of the two locations claimed by the complainant, would raise a federal question, would depend upon the consideration to be given to respondent's patent as against the matters charged in the bill. Manifestly, a claim of right based upon the mere location of a mining claim would not be sufficient for that purpose as against a patent regularly issued by the land department of the government, under authority of law, for the land covered by such location; and a bill of complaint setting forth such facts without any charge of fraud would be insufficient to state a cause of action, either upon a federal question or otherwise. As was said by Judge Ross in his concurring opinion in Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Min. Co., supra:

"It is essential for the bill to show by clear and unambiguous allegations that the suit involves a controversy that can only be determined by reference to the federal statute, and its proper application to the facts of the case."

It follows, necessarily, therefore, upon this aspect of the case, that no federal question appears in the bill of complaint.

But the bill alleges that a true construction of the act of May 10, 1872, limits the right of the land department to issue a patent for a mining claim to surface ground 300 feet on each side of the middle of the vein or lode, and that, inasmuch as the surface ground of the Gold Hill mining claim, as patented in 1883, exceeds 300 feet easterly from the center of the vein or lode, the patent is void on its face for such excess, and that the area in excess of such width allowed by law belongs to the complainant by virtue of the mining locations thereon, to wit, the Crœsus mining claim and the Suum Quique mining claim. This question, as to the extent of mining ground that may be included in a single patent, was considered by the supreme court of the United States in Smelting Co. v. Kemp, 104 U. S. 636, where Mr. Justice Field, speaking for the court, said:

"A patent, in a court of law, is conclusive as to all matters properly determinable by the land department, when its action is within the scope of its authority; that is, when it has jurisdiction under the law to convey the land. In that court the patent is unassailable for mere errors of judgment. Indeed, the doctrine as to the regularity and validity of its acts, where it has jurisdiction, goes so far that if, in any circumstances under existing law, a patent would be held valid, it will be presumed that such circumstances existed. * * * The case at bar, then, is reduced to the question whether the patent to Starr is void on its face; that is, whether, read in the light of existing law, it is seen to be invalid. It does not come within any of the exceptions mentioned in the cases cited. The lands it purports to convey are mineral, and were a part of the public domain. The law of congress had provided for their sale. The proper officers of the land department supervised the proceedings. It bears the signature of the president, or rather of the officer authorized by law to place the president's signature to it, which is the same thing. It is properly countersigned, and the seal of the general land office is attached to it. It is regular on its face, unless some limitation in the law, as to the extent of a mining claim which can be patented, has been disregarded. The case of the defendants rests on the correctness of their assertion that a patent cannot issue for a mining claim which embraces over one hundred and sixty acres. Assuming that the words 'more or less,' accompanying the statement of the acres contained in the claim, are to be disregarded, and that the patent is construed as for one hundred and sixty-four

acres and a fraction of an acre, there is nothing in the acts of congress which prohibits the issue of a patent for that amount. They are silent as to the extent of a mining claim. They speak of locations, and limit the extent of mining ground which an individual or an association of individuals may embrace in one of them. There is nothing in the reason of the thing, or in the language of the acts, which prevents an individual from acquiring by purchase the ground located by others, and adding it to his own. The difficulty with the court below, as seen in its charge, evidently arose from confounding 'location' and 'mining claim,' as though the two terms always represent the same thing, whereas they often mean very different things. A mining claim is a parcel of land containing precious metal in its soil or rock. A location is the act of appropriating such parcel according to certain established rules. It usually consists in placing on the ground, in a conspicuous position, a notice setting forth the name of the locator, the fact that it is thus taken or located, with the requisite description of the extent and boundaries of the parcel, according to the local customs, or, since the statute of 1872, according to the provisions of that act. Rev. St. § 2324. The location—which is the act of taking the parcel of mineral land—in time became among the miners synonymous with the mining claim originally appropriated. So now, if the miner has only the ground covered by one location, his 'mining claim' and 'location' are identical, and the two designations may be indiscriminately used to denote the same thing. But if, by purchase, he acquires the adjoining location of his neighbor,—that is, the ground which his neighbor has taken up,—and adds it to his own, then his mining claim covers the ground embraced by both locations, and henceforth he will speak of it as his 'claim.' Indeed, his claim may include as many adjoining locations as he can purchase, and the ground covered by all will constitute what he claims for mining purposes; or, in other words, will constitute his 'mining claim,' and be so designated. Such is the general understanding of miners, and the meaning they attach to the term. * * * In addition to all this, it is difficult to perceive what object would be gained, what policy subserved, by a prohibition to embrace in one patent contiguous mining ground taken up by different locations and subsequently purchased and held by one individual. He can hold as many locations as he can purchase, and rely upon his possessory title. He is protected thereunder as completely as if he held a patent for them subject to the condition of certain annual expenditures upon them in labor or improvements."

The foregoing case related to placer claims, but the same doctrine has been held by this court applicable to quartz claims. In the case of Carson City Gold & Silver Min. Co. v. North Star Min. Co. (C. C.) 73 Fed. 597, Judge Beatty said:

"The North Star patent is of greater superficial area than any law has ever authorized for a single-ledge location; but it has been held by the supreme court that, while the law prescribes a limitation to the size of a single location, there is no limitation to the number of claims one person may hold by purchase, or that may be included in a single patent, and, as I understand, that may be included in a single survey, showing only the exterior boundaries, and omitting all interior lines of the several smaller claims. Such was the holding as to agricultural lands in Polk's Lessee v. Wendell, 9 Cranch, 87, and as to placer claims in Smelting Co. v. Kemp, 104 U. S. 636. There appears no reason why the same rule should not apply to quartz claims. Independent, however, of the foregoing consideration, a patent has been granted for the North Star claim. It has passed beyond the field of discussion that a patent cannot be collaterally attacked on account of any question which the land department could lawfully determine before issuing it. Without now defining what questions are settled by the issuance of a patent, it is held that the question of the defendant's right to a patent to the North Star, with the boundaries as defined by it, was within the jurisdiction of the department, and was determined by it, from which it is held to follow that the boundary lines, as defined by the patent, are the only lines by which the rights of the parties can be determined. To adjudge such rights by the original lines of the several claims of which the North Star is composed would be such an

assault upon the patent as cannot be sustained. The former ruling upon plaintiff's objection is therefore adhered to."

This case was taken to the circuit court of appeals for this circuit, where the judgment of the circuit court was affirmed. 28 C. C. A. 333, 83 Fed. 658. Judge Hawley, speaking for the court, and citing from the case of Smelting Co. v. Kemp, supra, said:

"This language is certainly as applicable to the location of lode claims as to placer claims."

And citing further upon the conclusiveness of patents, he said:

"In Mining Co. v. Campbell, 17 Colo. 267, 29 Pac. 513, the court declared that there could be no higher evidence of title than a patent from the United States, and that, in favor of the validity and integrity of such an instrument, it must be presumed that all antecedent steps necessary to its issuance were duly taken. As was said by Mr. Justice Field in the Eureka Case [Fed. Cas. No. 4,548]: 'A patent of the United States for land, whether agricultural or mineral, is something upon which its holder can rely for peace and security in his possessions. In its potency, it is ironclad against all mere speculative inferences.' And in Chambers v. Jones, 17 Mont. 156, 42 Pac. 758, the court held that, after the issuance of a patent to a mining claim, the sufficiency of the location notice cannot be questioned. These general principles are amply sufficient to sustain the ruling and decision of the lower court. Any other conclusion might result in making invalid many patents heretofore issued upon consolidated locations. Especially would this be true if plaintiff's contention should be sustained that every presumption must be construed against the patent. A patent from the government would be of but little, if any, use or effect, if the duty devolved upon the patentee, whenever the validity of his claim is called in question, to prove that each separate location was properly made in strict conformity with the law. One purpose, object, and effect of procuring a patent is to at once and forever settle this question, and set at rest all further contests in relation to such matters. As was said by the court in Doe v. Mining Co. (C. C.) 54 Fed. 935, 940: 'If questions relating to the boundaries of the location, the marking of them, the discovery of a vein, lode, or ledge within them, the posting of the required notice, etc., are open to contestation after the issuance of a patent for the claim as before, the issuance of such an instrument would be a vain act, and would wholly fail to secure to the patentee the rights and privileges designed by the law authorizing its issue. The very purpose of the patent is to do away with the necessity of going back to the facts upon which it is based.' "

It does not appear from the bill of complaint in the present case, or from the copy of the patent of the Gold Hill quartz mine, attached to the bill, that the mining ground covered by the patent was a single location, or that it is in excess of the legal area of all the locations embraced within the patented area. It may have included a number of locations, the aggregate superficial area of which was 14.71 acres, with the length and width described in the patent. Indeed, this fact is not denied by counsel for the complainant. His contention is that the true construction of the act of May 10, 1872, limits the right and the jurisdiction of the land department of the government to issue a patent for a mining claim to surface ground not in excess of 300 feet on each side of the middle of the vein or lode for which the patent is issued. But, as we have seen, this position cannot be sustained under the law as construed by the courts. It must be held, therefore, that the bill of complaint does not state facts sufficient to constitute a cause of action against the respondent upon any federal question with respect to any alleged trespass upon that portion of the Suum

Quique and Crœsus locations within the boundaries of the Gold Hill mining claim, and it follows that the demurrer must be sustained, and the order to show cause why an injunction should not issue be discharged; and such will be the order of the court.