## OSCAMP v. CRYSTAL RIVER MIN. CO.

### (Circuit Court of Appeals, Eighth Circuit. October 2, 1893.)

### No. 212.

1. MINES AND MINING—OVERLAPPING LOCATIONS—ABANDONMENT.
   Mere failure during one year to perform the annual development work required by Rev. St. § 2324, does not divest title to a Colorado mining claim in favor of a junior overlapping location, which is not thereafter relocated in the manner prescribed by the Colorado statutes, (sections 3160, 3162;) and the resumption of development works on the senior claim in the succeeding years restores to its owner all his original rights. Belk v. Meagher, 104 U. S. 279, applied.

2. SAME—INTERSECTING VEINS.
   The position of the junior locator in such case is not aided by the fact that his location rests upon the discovery of a vein which crosses the vein of the senior location; for, while he may be entitled to work his vein into the senior location, and up to the point of crossing, this does not affect the senior locator's right to the possession of the entire surface of his claim.

3. EJECTMENT—PLEADING—QUANTITY OF LAND RECOVERABLE.
   In an ejectment suit plaintiff is not ordinarily limited in his recovery to the precise amount specified in his declaration, but may recover a less quantity.

In Error to the Circuit Court of the United States for the District of Colorado.

At Law. Action of ejectment brought by Alfred Oscamp against the Crystal River Mining Company. Verdict and judgment for defendant. Plaintiff brings error. Reversed.

L. C. Rockwell, for plaintiff in error.
Charles J. Hughes, Jr., for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. The question presented by this record appears to be one of first impression, and arises out of the following facts: The plaintiff in error is the owner of an undivided one-third part of the Excelsior No. 1 lode mining claim, hereafter called the "Excelsior Claim," situated in the Elk Mountain mining district, Gunnison county, Colo. The defendant in error is the owner of the Black Queen lode mining claim, hereafter termed the "Black Queen," which is situated in the same district, county, and state. Of these claims the Excelsior is founded upon the earlier location. Both claims are rectangular in shape, and, as originally laid upon the surface of the earth, the north side line of the Black Queen runs diagonally across the southwest corner of the Excelsior claim, and cuts off from the latter claim a small, triangular piece of ground having an area, as it is said, of about three-quarters of an acre. A suit was brought by the plaintiff in error on July 7, 1890, against the defendant in error in the circuit court for the district of Colorado, to recover the triangular parcel of land aforesaid, on the ground that the owners of the Excelsior claim had the superior title thereto by reason of their older location, and that they had been wrongfully ousted from the possession thereof by the defendant in error. On the trial in the circuit court it appeared from an admission made by counsel for the plaintiff that after the Excelsior claim was located the requisite amount of development work under section 2324 of the Revised Statutes of the United States (to wit, $100 worth of work per year, the claim having been located after May 10, 1872) was done during each of the years 1882 and 1883, that no work was done on the claim during the year 1884, but that the owners reentered and resumed development work in 1885. When this admission was made, the circuit court charged, in substance, that the failure of the owners of the Excelsior claim to do any development work thereon during the year 1884 made the Black Queen location good as to all of the lands within its side lines and end lines, including the triangular piece heretofore mentioned, notwithstanding the fact that the owners of the Excelsior claim had originally had the superior title to the triangle in question by virtue of their older location. The theory of the circuit court seems to have been that, as the owners of the Black Queen continued in possession and at work on their claim during and after the year 1884, while operations on the Excelsior claim were suspended, and that as the two claims conflicted and overlapped in the manner before indicated, the failure of the owners of the Excelsior claim to do

any work during the year 1884 was an abandonment of their superior right to the space where the claims overlapped, and that as to such territory the title of the Black Queen became paramount without any affirmative action on the part of its owners, from and after January 1, 1885, and that the relative status was not altered when the Excelsior claimants resumed work during that year. The soundness of that view is challenged by the plaintiff in error, and the action of the circuit court in enforcing it in its charge is the error that we have to review.

In Belk v. Meagher, 104 U. S. 279, 283, it was held, after much consideration, that a mining location, when perfected according to the statutes of the United States and local laws and regulations, "is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent," and that there is nothing in the law under which such property is acquired "which makes actual possession any more necessary for the protection of the title acquired to such a claim by a valid location than it is for the protection of any other grant from the United States." It was furthermore held in that case that a failure to do the requisite amount of annual development work on a claim under section 2324 of the Revised Statutes of the United States simply renders the claim subject to relocation by third parties, after the lapse of the year, and not before, and that such right of relocation is itself lost, and the original owner is restored to all of his rights, if he enters without force, and resumes work, before a relocation is perfected by any third party.

It should be further observed that the laws of the state of Colorado contain provisions relative to the relocation in whole or in part of abandoned lodes, and also as to the making and filing of amended location certificates under certain circumstances. These several provisions of the Colorado statutes (Mills' Ann. St.) are as follows:

"Sec. 3162. The relocation of abandoned lode claims shall be by sinking a new discovery shaft and fixing new boundaries in the same manner as if it were the location of a new claim: or the relocator may sink the original discovery shaft ten feet deeper than it was at the time of abandonment, and erect new, or adopt the old boundaries, renewing the posts if removed or destroyed. In either case a new location stake shall be erected. In any case whether the whole or part of an abandoned claim is taken, the location certificate may state that the whole or any part of the new location is located as abandoned property."

"Sec. 3160. If at any time the locator of any mining claim heretofore or hereafter located, or his assigns, shall apprehend that his original certificate was defective, erroneous, or that the requirements of the law had not been complied with before filing, or shall be desirous of changing his surface boundaries, or of taking in any part of an overlapping claim which has been abandoned, or in case the original certificate was made prior to the passage of this law and he shall be desirous of securing the benefits of this act, such locator or his assigns may file an additional certificate subject to the provisions of this act. * * *"

In view of the rights that are thus acquired under the laws of the United States by the owner of a mining claim who has made a valid location, and in view of the foregoing provisions of the Colorado statutes, we are constrained to hold that the owners of the Black

Queen did not acquire a superior right to the triangular parcel of land which is the subject of controversy, merely because the owners of the Excelsior claim failed to do the requisite amount of development work during the year 1884, they having resumed work in the year 1885 prior to the alleged ouster. We are unable to see upon what principle the failure to do such work operated to extinguish the title of the owners of the Excelsior claim, and to transfer it to the owners of the Black Queen. In the early days of mining, before the adoption of any laws on the subject of mining locations, there may have been such a thing as a title to a mining claim that was so entirely dependent upon possession that it ceased to exist when actual possession of the claim ceased; but at the present time the title to a well-located mining claim is not of that precarious character, for the reason that it is not exclusively dependent upon possession, but rests upon a statutory grant. As was said in Belk v. Meagher, supra, actual possession is no more necessary to protect the title to a mining claim than it is to protect the title to property acquired under any other grant from the United States. The necessary conclusion seems to be that neither the failure of the owner to occupy or to work his claim during a given year will operate to divest him of his title, and to confer it upon another. A failure to work a claim to the extent required by the statute simply entitles a third party to relocate it in the mode pointed out by existing laws, and, as the statutes of Colorado prescribe the mode in which third parties may divest the title of the original owner by a relocation, if the statutes in that respect are not pursued, the status of all persons remains unaltered, barring the possible effect of limitations or laches; and if at any time the original owner re-enters, and resumes work, the right of relocation is then lost.

It is not denied, as we understand, that the views last expressed would be sound if the defendant in error was an ordinary third party seeking to appropriate the plaintiff's claim, but it is suggested that it is not an ordinary third party, against whom the above views would be clearly tenable, for the reason that the Black Queen location rests upon the discovery of a lode which crosses the vein on which the Excelsior location is founded, so that, in any event, and notwithstanding its later location, the owner of the Black Queen could hold its vein within the disputed triangle, except at the very point of intersection of the two lodes. We are not disposed to controvert the proposition last stated, as it is supported by repeated decisions of the supreme court of the state of Colorado. Branagan v. Dulaney, 8 Colo. 408, 8 Pac. Rep. 669; Lee v. Stahl, 9 Colo. 208, 11 Pac. Rep. 77; Id., 13 Colo. 174, 22 Pac. Rep. 436. But we fail to see that the circumstance thus invoked places the defendant company in any more favorable attitude with respect to the existing controversy than would be occupied by any third party. The plaintiff in this case is endeavoring to assert his superior right to the surface ground included within the small triangle. He is not seeking, apparently, to recover and to hold the defendant's lode or vein; and, even if he should prevail in this action, the defendant would still retain its cross vein within the triangle, except at the

point of intersection of the two veins, together with such right of way for the purpose of taking out mineral as is now accorded to the owners of a cross vein when it passes through an older location. As it is the right to the surface ground lying within the triangle that is now in dispute, we are unable to see that the defendant company can acquire a paramount right thereto as against the owner of the Excelsior claim, except by taking the same action under existing laws that other persons would be required to take if they desired to appropriate it as abandoned property.

It is further insisted by the plaintiff that the circuit court committed another error, to his prejudice, in instructing the jury, in substance, that the plaintiff ought not to recover if it appeared that he was not entitled to the possession of the full quantity of land described in his declaration, to wit, 752-1000 of an acre, although it did appear that he was entitled to recover a triangular piece containing a less area. This assignment of error on the facts disclosed by the present record would seem to be well taken. In a suit in ejectment a plaintiff is not ordinarily limited in his recovery to the precise quantity of land specified in his declaration, but may recover a less quantity. We would not, however, be understood as expressing a definite opinion on the last assignment, for the reason that considerations may have been present to the mind of the trial judge which are not disclosed to us by the present record or by the briefs of counsel, which, in the present case, fully justified the instruction complained of. This is a matter which is accordingly left open for reconsideration on a second trial.

For the error in the charge first above indicated the judgment of the circuit court is hereby reversed, and the cause is remanded, with directions to award a new trial.