# Davis et al. v. Denver Union Water Co., et al.

*District Court of Arapahoe County, December 2, 1901. No. 30,038.*

308

Carpenter J.

The plaintiffs in their amended complaint assert title to a certain mining claim 1500 feet in length by 300 feet in width, located in Jefferson and Douglas counties in this state, known as the Bluebird claim. The title set up is the inchoate possessory title derived by compliance with the mining laws of the United States and this state. It is alleged that this title had its inception on the 27th day of October, 1900. It is apparent, however, by reference to other parts of the pleading, that this statement of the year is a clerical error and should have been 1896. It is averred that the defendants, at the time of the filing or the original complaint, September 5th, 1899, were threatening to enter upon the Bluebird claim with a force of men to cut down the timber and dispose of it either as merchandise or in the construction of a dam at a point on the river about one and three-quarter miles below the mining claim. Also that by means of the dam so being erected the defendants threaten to dam up the waters of the river to such an extent that the Bluebird claim will be about 150 feet below the surface of the water. Upon this and other allegations of the plaintiffs not necessary to be here detailed at length the plaintiffs procured an injunction restraining the defendants from cutting and disposing of the timber and from flooding the said Bluebird mine.

The defendant, The South Platte Canal & Reservoir Company, after some dilatory pleading, filed

its answer putting in issue the allegations of the amended complaint showing compliance on the part of the plaintiffs with the mining laws in respect to the Bluebird claim. It denies that the water in the dam when constructed will cover all of the Bluebird claim, and avers that a portion of said claim is not below the high water line of its proposed reservoir. It also denies that the plaintiffs or either of them have or ever had any title to that portion of the Bluebird claim brought in controversy in this action, or that they have or ever had possession of such portion, or any right to the possession, use or occupancy thereof. For a further answer the defendant reservoir company avers title in itself to all of the property described in the complaint except about two acres on the north end; that such title is derived from the United States, and that it is in the sole and exclusive possession of said property, and was such owner and possessor and in the possession and occupancy thereof prior to the 27th day of October, 1896, and has been such owner and entitled to and in possession continuously since that date.

By replication the plaintiffs deny all new matter set up in the answer of the reservoir company.

It is deemed unnecessary to recite the substance of the pleading of the defendant water company further than to say that it denies the cutting or threatened cutting of timber or that it is engaged in the construction of the dam.

From the evidence adduced at the trial it appears that in the fall of 1893 the defendant Reservoir Company conceived the purpose of procuring from the Government of the United States a reservoir site and to construct a reservoir or dam in a

canon of the South Fork of the South Platte River.
Immediately or shortly after the purpose was formed
the Reservoir Company set about the preliminary
work necessary to bring about the fulfillment of its
said purpose. It made a survey of the proposed site
and marked the contour thereof by setting stakes
and blazing trees at irregular distances. This field
work was completed in the spring of 1894, and in
October of that year a map of the proposed site was
filed with the Register of the Land Office at Denver.
The map was approved by the Acting Secretary of
the Interior on the 19th day of August, 1895, and
upon such approval the map was noted upon the
plats in the Land Office at Denver. These things
were done under sections 18, 19, 20 and 21 of the act
of congress approved March 3d, 1891. 26 U. S. Stat.
at L. § 1095. These sections are as follows.

"Sec. 18. That the right of way though the pub-
lic lands and reservations of the United States is
hereby granted to any canal or ditch company formed
for the purpose of irrigation and duly organized
under the laws of any state or territory, which shall
have filed, or may hereafter file, with the Secretary
of the Interior a copy of its articles of incorporation,
and due proofs of its organization under the same, to
the extent of the ground occupied by the water of
the reservoir and of the canal and its laterals, and
fifty feet on each side of the marginal limits thereof;
also the right to take, from the public lands adjacent
to the line of the canal or ditch, material, earth and
stone necessary for the construction of such canal or
ditch: Provided, that no such right of way shall be
so located as to interfere with the proper occupation
by the Government of any such reservation, and all

maps of location shall be subject to the approval of the Department of the Government having jurisdiction of such reservation, and the privilege herein granted shall not be construed to interfere with the control of water for irrigation and other purposes under authority of the respective states or territories.

Sec. 19. That any canal or ditch company desiring to secure the benefits of this act shall, within twelve months after the location of ten miles of its canal, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a map of its canal or ditch and reservoir, and upon the approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of subject to such right of way. Whenever any person or corporation, in the construction of any canal, ditch or reservoir; injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage.

Sec. 20. That the provisions of this act shall apply to all canals, ditches, or reservoirs, heretofore or hereafter constructed, whether constructed by corporations, individuals or associations of individuals, on the filing of the certificates and maps herein provided for. If such ditch, canal, or reservoir, has been or shall be constructed by an individual or association of individuals, it shall be sufficient for such individual or association of individuals to file with the Secretary of the Interior, and with the reg-

ister of the land office where said land is located, a map of the line of such canal, ditch, or reservoir, as in a case of a corporation, with the name of the individual owner or owners thereof, together with the articles of association, if any there be. Plats heretofore filed shall have the benefits of this act from the date of their filing, as though filed under it: Provided, That if any section of said canal, or ditch, shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any uncompleted section of said canal, ditch, or reservoir, to the extent that the same is not completed at the date of the forfeiture.

Sec. 21. That nothing in this act shall authorize such canal or ditch company to occupy such right of way except for the purpose of said canal or ditch, and then only so far as may be necessary for the construction, maintenance, and care of said canal or ditch."

Subsequent to the approval of its map the reservoir company began the erection of a dam across the waters of the South Fork and began putting the ground within the contour of the reservoir site in condition to receive the water, by clearing it of debris and cutting and removing the timber growing thereon, which work has continued to the present time.

The evidence shows for the plaintiffs that on October 27th, 1896, a location stake conforming to the law in that regard was set some fifty feet west of the westerly contour of the reservoir site; that a shaft to the depth of ten feet or more was sunk there within the time limited by law; that six stakes were set showing the boundaries of the claim, and that a

location certificate describing the claim and conforming to the requirements of law in that behalf was filed with the clerk of Douglas County within 90 days from the date of location, and that annual labor was thereafter performed upon the claim for the years 1897 and 1898, so that if they had mineral, there was, at the date of the beginning of this suit, a valid mining location. This Bluebird claim as marked upon the ground and defined by the location certificate conflicts with the reservoir site, and it is with respect to that portion of the claim that lies within the boundaries of the reservoir site that this controversy arose.

The case presents the question whether the defendant reservoir company had a valid title to the reservoir site at the time of the location of the Blue Bird claim. It is contended by the plaintiffs that inas-much as the law above quoted requires that the map shall be approved by the secretary of the interior, its approval by the acting secretary is not a compliance with such provision. I think this position is not tenable. The acts of the acting secretary of an executive department have, so far as I am able to learn, always been recognized to be as valid and binding as the acts of the secretary himself. For the time being he is the secretary. It is further urged on behalf of the plaintiffs that it appears from the evidence that the water to be collected in the reservoir was intended to be used for domestic purposes, and that such use was not contemplated by the act of congress under consideration. Attention is directed to the following language: "that the right of way through the public lands and reservations of the United States is hereby granted to any canal or ditch

company formed for the purpose of irrigation." The words, "for the purpose of irrigation" apparently exclude companies formed to collect and distribute water for other purposes than that of irrigation from the acquisition of the rights and privileges proffered by the statute. The contention of the plaintiffs in this regard cannot be sustained for two reasons: first, the articles of incorporation of the reservoir company are not before the court, and the court, therefor, cannot say for what purpose or purposes the reservoir company was formed; second, assuming that the Reservoir Company was not formed for the purpose of irrigation but for the distribution of water for domestic purposes, nevertheless the plaintiffs and the court are concluded by the action of the secretary of the interior in approving the map. The law requires as a condition precedent to the approval of the map that there shall be filed with the secretary a copy of the articles of incorporation, and the rules of the department require certified copies of the law under which the company was organized, of the laws governing water rights and irrigation, and of the company's title or right to appropriate the water needed for its canals, ditches and reservoirs, certified as required by the state laws. It is to be presumed that all of these were before the secretary at the time he endorsed his approval upon the map. He may have misconstrued the law, or acted without due consideration, or he may have been imposed upon, or he may have acted in bad faith, yet his action cannot be questioned collaterally. Until such action is set aside in a proceeding instituted by the federal government directed to that end, it is to be held to have been rightly done, and that the result intended

by the legislative act to be effected did in fact follow.

The result contemplated by the statute, and in fact produced by the approval of the map by the secretary of the interior, was the investiture of the reservoir company with the right to cover the surface of the ground within the boundary lines of the reservoir site with water and to keep it there in store.

The case of Noble v. Union River Logging Railroad Company, 147 U. S. 165, is directly in point. That case arose under an act granting to railroad companies the right of way over the public domain, approved March 3, 1875. The granting clause of the act of 1875 is substantially the same as that contained in the act the interpretation of which is drawn in question here. It is as follows:

"That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized." It provides, as does the act in question here, that a map of the proposed location of the railroad shall be submitted to the secretary of the interior for his approval, and that if approved by him, subsequent grants of the lands covered by the right of way shall be made subject to such right of way. Mr. Justice Brown, delivering the opinion of the court, said:

"At the time the documents required by the act of 1875 were laid before Mr. Vilas, then secretary of the interior, it became his duty to examine them, and to determine, amongst other things, whether the railroad authorized by the articles of incorporation was such a one as was contemplated by the act of congress. Upon being satisfied of this fact, and that

all the other requirements of the act had been observed, he was authorized to approve the profile of the road, and to cause such approval to be noted upon the plats in the land office for the district where such land was located. When this was done, the granting section of the act became operative, and vested in the railroad company a right of way through the public lands to the extent of 100 feet on each side of the central line of the road."

Then, after distinguishing cases bearing upon this question and pointing out that there are two classes, the first class being those cases where the action of the land department was held to be not merely irregular, but absolutely void, because the department had no jurisdiction over the land that was the subject of its action; the second class being composed of those cases in which the land department did have authority to dispose of the land and it was consequently held that its finding could not be collaterally impeached, the learned justice goes on to say:

"We think the case under consideration falls within this latter class. The lands over which the right of way was granted were public lands subject to the operation of the statute, and the question whether the plaintiff was entitled to the benefit of the grant was one which it was competent for the secretary of the interior to decide, and when decided, and his approval was noted upon the plats, the first section of the act vested the right of way in the railroad company, The language of that section is that the right of way through the public lands of the United States is hereby granted to any railroad duly organized under the laws of any state or terri-

tory,' etc. The uniform rule of this court has been to be thereafter identified. Denver & R. G. R. Co. v. Alling, 99 U. S. 463 (25:438). The railroad company became at once vested with a right of property in these lands that such an act was a grant *in præsenti* of the lands, of which they can only be deprived by a proceeding taken directly for that purpose. If it were made to appear that the right of way had been obtained by fraud, a bill would doubtless lie by the United States for the cancellation and annulment of an approval thus obtained."

It is true, as pointed out by the plaintiffs' counsel, that the case from which I have just quoted involved the right of the secretary of the interior to revoke the action of his predecessor approving the map; but the propositions of law upon which the court bases its conclusion apply as well here as in that case. The proposition is that the action of the secretary of the interior approving the map invested the applicant with a right of property.

This suit was begun September 5th, 1899. It is argued that the five years allowed by the statute for the completion of the work had expired before the beginning of the suit, and that the land in controversy not having been subjected within that period to the use contemplated by the act, in that it had not been covered with water, whatever right the Reservoir Company may have acquired by virtue of the approval of its map had been forfeited; that upon the failure of the Reservoir's Company's title for condition broken the plaintiffs' claim attached, and the land in controversy became his by possessory title under the mining laws. This contention cannot prevail for a number of reasons.

1. The period of five years allowed by the statute for the completion of the work did not begin to run until the approval of the company's map by the secretary, August 19, 1895. The language of the act is, "that if any section of said canal or ditch shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any uncompleted section of said canal, ditch or reservoir, to the extent that the same is not completed at the date of forfeiture."

The word "location" does not, in my opinion, refer, as suggested by counsel for the plaintiffs, to the date of the completion of the preliminary survey and marking of the ground. The Reservoir Company became invested with no right in the land by the doing of this preliminary work or by its completion. Until the map was approved the proposed site was unburdened public land of the United States, open to any one to acquire right of property therein under the laws of the United States. It was obviously the intent of congress that a company which should avail itself of the benefits and privileges of the statute should have the full period of five years within which to do the work contemplated, and such company would have no right to enter upon the land for the purpose of doing such work until it acquired title by the approval of the map.

2. If it be conceded that time began to run against the Reservoir Company at the date of the completion of the survey and marking of boundaries, the five years had not elapsed when the plaintiffs made their location. Such location was made subject to the right of the Reservoir Company to collect water and keep the same in store upon the ground

in controversy, and by clear implication the land was burdened in favor of the company to a sufficient depth to furnish support for all the water to be collected there. To this extent the Reservoir Company was entitled to the exclusive possession and use of the land. An entry upon such portion of the land would be a trespass, and it is a general rule of law that no right may be initiated by a tretpass. Seymour v. Fisher, 16 Colo. 188; Oscamp v. Crystal River Mining Co., 58 Fed. 293; Erhardt v. Boara, 113 U. S. 527; Thallman v. Thomas, C. C. A. (8th Cir.), October 14, 1901.

3. Though the Reservoir Company failed to do any work after the approval of its map, or failed to complete it within the time limited by the statute, there would be no forfeiture. The language of the railroad act of March 3, 1875, as well as that of almost every other act of congress granting rights of way to railroad companies, with respect to forfeiture, is substantially the same as that of the act now under consideration. The supreme court of the United States having these acts under consideration has time and time again held that there is no forfeiture for failure to perform the work required until declared by congress or by judicial decree in a proceeding instituted to that end by authority of the federal government. The grant in this case was a present grant, with condition subsequent, and failure to perform the condition would not *ipso facto* work a forfeiture of title and restore the estate. If there be such a thing as settled law, this matter is certainly at rest.

Noble v. Railroad Company, *supra*, is an authority upon this proposition. United States v. Northern

Pacific R. Co., 177 U. S. 435, is another. The cases are so numerous, however, that I shall not undertake to give further citations.

It not appearing that the estate granted to the Reservoir Company has at any time reverted to the grantor, the suggestion that a court of equity will sometimes dispose of a case in accordance with the conditions existing at the time of the trial requires no discussion. The title of the Reservoir Company, as to strangers, is the same to-day as it was at the time it vested.

There is no analogy between the act of congress under consideration here and the mining laws. There are no words of present grant in the latter. The conditions imposed by them are precedent and not subsequent.

In the view that I take of this case as above expressed, the question whether there was a vein carrying mineral disclosed in the discovery shaft becomes immaterial.

The injunction is dissolved and the complaint dismissed.