[No. 5682.]

MOORHEAD ET AL. v. THE ERIE MINING AND MILLING COMPANY.

1. **Judgments—Res Judicata—Pleading—Admissions—Effect.**

Where a judgment relied upon as res judicata is set forth with sufficient fullness in the answer and admitted by the replication, it becomes a fact in the case, and need not be formally offered in evidence.—P. 413.

2. **Judgments—Res Judicata—Issues Identical.**

Unless the issues in two suits are identical, the judgment in the earlier suit cannot be relied on as res judicata in the later suit.—P. 414.

3. **Mines and Mining—Locations—Discovery Cut on Prior Claim —Effect.**

If the discovery cut of a mining location be upon territory covered by a pre-existing valid mining location, such cut is of no avail, and the second attempted location is invalid.—P. 414.

4. **Same.**

Where two conflicting mining locations are made on the same day and by the same party, the location acts being performed upon one of them in the forenoon and upon the other in the afternoon, the former constitutes a prior location and takes the conflict ground as effectively as if the latter had been made a month or a year afterward.—P. 415.

5. **Same—Abandonment of Prior Location—Effect.**

Upon forfeiture or abandonment of a senior mining location, a junior mining location in conflict therewith does not absorb the conflict territory. Such territory becomes a part of the public domain and is subject to relocation by a third party.—P. 415.

**6. Same—How Conflict Territory Secured.**

If the same party own two conflicting mining locations and the senior location is lost by forfeiture or abandonment, he may secure the conflict territory in either of three ways: by re-entering without force and resuming work upon the abandoned claim before rights thereto are acquired by a third party; by filing an additional or amended location certificate making the conflict territory a part of his junior location; or by initiating an entirely new location of the ground before intervening rights are secured by another.—P. 416.

*Appeal from the District Court of San Miguel County.*

*Hon. Theron Stevens, Judge.*

Adverse suit by A. L. Moorhead, H. M. Hogg, and C. L. Watson against The Erie Mining and Milling Company to establish their right to certain mining property. From a judgment for defendant, plaintiffs appeal.                    *Reversed.*

Mr. H. M. HOGG and Mr. C. L. WATSON, for appellants.

Messrs. FITZGERALD & BROWN, for appellee.

When this action was begun and for a considerable period prior thereto, appellee, The Erie Mining and Milling Company, was owner of the Last Chance and Gridley lode claims, and appellant was owner of the St. Louis and Overlook lode claims. The Last Chance and Gridley were the earlier locations, the former preceding the latter. The Overlook location was made nearly four years, and the St. Louis upwards of six years, later than the Last Chance and Gridley.

By reference to the plat incorporated into the opinion, it will be seen that the Overlook overlaps a small portion of the southerly end of the Gridley. It will also thus be seen that the Gridley conflicts with and takes in a considerable portion of the Last

Chance; while the St. Louis location is so laid as to cover a large part of both the Last Chance and Gridley, including the main portion of the conflicting ground between the latter two claims. By reference to the plat, it will also be further observed that the discovery cut of the St. Louis is upon the territory covered by the conflict between the Gridley and Last Chance.

In 1902 appellant, Moorhead, applied for a patent on the Overlook claim; and appellee filed an adverse on behalf of the Gridley and instituted the usual adverse suit. On June 13 of that year, judgment was entered in that action in favor of the Gridley, awarding to appellee possession of the Gridley claim, including the territory in conflict with the Overlook.

Eleven days after that judgment was entered, and on, to wit, June 24, 1902, appellant, Moorhead, located the St. Louis claim. This location was based upon the alleged fact that appellee had failed to perform the annual assessment work for 1901 upon the Last Chance, and that, therefore; the Last Chance territory, including the territory in conflict between it and the Gridley, was subject to relocation.

Appellants, Hogg and Watson, became co-owners with Moorhead of the St. Louis in October, 1903. Thereafter appellee applied for patent for the Gridley claim. The application was adversed by appellants on behalf of the St. Louis claim; the adverse suit was ultimately decided in favor of appellee and judgment entered awarding the Gridley the territory in conflict. To reverse that judgment, the present appeal was taken.

Prior to the institution of the latter suit, an ejectment action between the St. Louis and Last Chance had been tried, in which the former was successful; other matters also appear in the record. But

it is believed that a consideration of neither that ejectment suit nor such other intervening matters is essential to this decision.

The complaint in the present action was in the usual form of such pleadings in adverse actions or suits.  The answer pleads some five or six defenses. The first of these defenses puts in issue the material allegations of the complaint.  The second alleges as a separate defense the Overlook-Gridley adjudication and judgment above mentioned.  And that proceeding and judgment are relied upon as *res judicata* of the present action.  The replication admits the bringing of that action and obtaining of the judgment therein as averred in the answer; but denies that the same was or is in any manner *res judicata* of the present suit.  It is unnecessary to specify or analyze the remaining defenses alleged in this answer or those portions of the replications referring thereto.

At the trial of the cause, it was stipulated that all of the necessary physical acts required were properly performed in connection with the original locations of the Gridley, St. Louis and Last Chance; also that the adverse was duly filed in the land office, and the adverse suit was duly and properly begun.  Appellants, who were plaintiffs, among other things, introduced a map or plat, a copy of which is embodied in the opinion.  Appellant Moorhead, referring to this plat, testified:

"The point marked 'discovery No. 2' (discovery cut of St. Louis) was on public domain.  At the time it (the St. Louis) was located, it was vacant ground."

Moorhead and the witness Dutton both testified to the fact that the Last Chance location preceded the Gridley location, Dutton also saying:

"The discovery work was done first on the Last Chance, and the record was filed first on the Last Chance. I understand that the Last Chance was the prior claim."

The exact area of the conflict between the St. Louis and Gridley was described by the witness Gilkerson. Other evidence was offered, but it need not be here stated.

When plaintiffs (appellants) rested, a motion was interposed for a nonsuit. This motion was granted, and judgment was entered accordingly. The trial court, in granting said motion, made an oral decision. By this decision, it clearly appears that he rested his conclusion upon the proposition that the Overlook-Gridley judgment was *res judicata* of the present action. Among other things, he says:

"In the complaint filed in the original action, the company (appellee here) claimed the right to the possession of the Gridley lode * * * the defendants (appellants here) in that action denied that the company was entitled to the claim as described in the complaint. * * * A decree was entered and judgment that the plaintiff was entitled to the Gridley claim and was the owner of it; and that action decided all matters which were in issue and which might have properly been put in issue between the contestants. That being the case, plaintiff (Moorhead) in this action and all those claiming under him are estopped from ever setting up any claim to the Gridley lode, or any portion of it, and as between them and the defendant (appellee here) it has been fully adjudicated and their rights are determined."

Mr. JUSTICE HELM delivered the opinion of the court:

It is necessary to consider but two questions in determining the present appeal, viz.: First, Was the

judgment of June 13, 1902, rendered in the action between the Gridley and Overlook lode claims *res judicata* of this controversy? Second, If not, was the judgment of nonsuit entered in the court below warranted by the evidence introduced and condition of the record otherwise, when appellants rested their case?

The Gridley-Overlook judgment was set forth with sufficient fullness in the answer, and its existence as pleaded was admitted by the replication. The trial court was, therefore, justified in taking cognizance thereof, although it was not formally offered in evidence.

That judgment was rendered in an adverse suit brought on behalf of the Gridley claim; a small portion of the south end of this claim being included within the Overlook junior location and subsequent survey for patent. Neither the Last Chance nor the St. Louis location was in any manner involved in that litigation. The latter claim could not have been so involved, for, as a matter of fact, it was not then discovered or located. Moreover, the territory in controversy in the present action, being a portion of the north end of the Gridley, was several hundred feet distant from the nearest part of the conflict ground in the Overlook-Gridley litigation. So that the two controversies involve mainly different mining locations and relate to wholly different and distinct territory. The only identity existing between the two causes is that of the parties; and even in this particular, two of the present appellants participate in such identity solely as privies, having taken title to their respective interests in the St. Louis lode after the Overlook-Gridley action was finally determined.

There was, therefore, no identity between the two suits as to the subject-matter in controversy or

the causes of action or the issues involved. But the law is, that unless the issues in two suits be identical, the judgment in the earlier suit cannot be relied on as *res judicata* in the later suit.—24 Am. & Eng. Enc. Law 780, and cases.

The second question above suggested rests primarily upon a proposition of law, viz.: Was the St. Louis a valid location? It was stipulated at the trial that all of the physical acts necessary were performed in making this location. The proofs show the performance of the requisite annual assessment work subsequent to such location. And the above question, therefore, resolves itself into the inquiry: Was that portion of the ground within the St. Louis boundaries which is involved in the present controversy and which is also within the Gridley surface lines, a part of the public domain at the time the St. Louis location was made? If it was not, not only did the St. Louis acquire no interest in the conflict ground, but its entire location was invalid, as the discovery cut is on this conflict ground. The answer to this inquiry requires a discussion of the status of the Last Chance location in relation to the Gridley location, as the two conflicted, and it is such conflict territory to which the St. Louis now lays claim.

The relative positions of the four mining locations above referred to, and of the conflict territory to which the two controversies relate, will be seen by inspection of the following plat introduced in evidence, such conflict territory being represented by the shaded portions thereof:

It is stipulated that all of the requisite physical acts were also performed in connection with the location of the Last Chance and Gridley claims. But under the evidence it appears without controversy that the Last Chance location preceded the Gridley location; the discovery of mineral and erection of the discovery stake and notice upon the former being made in the forenoon and upon the latter in the afternoon of the same day; the various other acts requisite to a valid location being performed first upon the Last Chance, and afterwards upon the Gridley. The Last Chance was the senior and the Gridley the junior location. It follows, therefore, that the conflict territory between these two locations belonged to the Last Chance and not to the Gridley. This territory was segregated as effectively from the public domain, by the Last Chance location, as if the Gridley location had been made a month or a

year afterward. Nor is this conclusion in any manner changed or modified by the fact that the same parties made both locations.

The foregoing legal proposition is so familiar and so well established that the citation of authorities thereto is unnecessary.

So long as the Last Chance claim was not forfeited by abandonment or otherwise, the conflict territory between it and the Gridley claim was not subject to relocation by any one. But upon such abandonment, this ground would revert to the public domain; for, although within the surface boundaries of the Gridley, it would not become an integral part of that claim. It would be subject to relocation by appellee or by another. Appellee might avoid the effect of such abandonment by itself re-entering without force upon the Last Chance and resuming work thereon before a third party acquired rights therein; or appellee might make the conflict territory a part of the Gridley claim by filing an additional or amended location certificate, as prescribed by statute; or, finally, appellee might secure ownership of this conflict territory, as well as of other parts of the abandoned Last Chance, by initiating an entirely new location before intervening rights were acquired through similar steps by a third party. But, failing to act promptly and avail itself of one of these privileges, appellee would lose all right to the ground upon the perfecting of a location thereof by another party.— 1 Lindley on Mines (2d ed.), § 363; *Johnson v. Young,* 18 Colo. 625; *Belk v. Meagher,* 104 U. S. 285; *Oschamp v. Crystal R. M. Co.,* 58 Fed. 295.

The evidence before the court when the motion for a nonsuit was granted in the case at bar tended to show that the Last Chance location was forfeited or abandoned by failure to perform the annual assessment work upon the same for the year 1901.

Nothing was then in the record showing or tending to show a relocation of this conflict ground by appellee, or any attempt through the filing of an additional location certificate to incorporate the same into the overlapping Gridley location; nor did there appear to have been a re-entry and resumption of work thereon by. appellee after the abandonment took place. Therefore, according to the record, as made when the nonsuit was granted and the judgment entered, the conflict territory in question had become a part of the public domain, and the relocation thereof by appellant Moorhead as the St. Louis claim was valid.

Of course we cannot conjecture what would have happened had the motion for a nonsuit been overruled and had appellee offered evidence in its own behalf. But it .clearly follows, from the foregoing discussion and conclusions, that there was sufficient in the record to put appellee upon its proofs and to require submission of the cause to the jury. The judgment must be reversed.                  *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MAXWELL concur.