SEYMOUR v. FISHER ET AL.

1. MINING LOCATION — TRESPASSING THEREON.— The owner of a valid mining location is entitled to its exclusive possession and use as against all the world.  A stranger going thereon for the purpose of discovering veins, of cutting and removing timber, or of otherwise interfering with the locator's possession and use, is a trespasser.

2. INTEREST IN MINING LOCATION SUBJECT TO TAXATION AND EXECUTION.— The interest held under a valid mining location is in this state subject to taxation, and liable to levy and sale under execution in satisfaction of the owner's debts.

3. POSSESSORY RIGHTS AND ADVERSE PROCEEDINGS.— It is the settled policy of the general government that all controversies relating to conflicting mining locations be, so far as possible, adjudicated prior to patent.  And the statutes conferring exclusive possessory rights being *in pari materia* with those relating to adverse proceedings, both must be construed together.

4. PRIORITY OF LOCATION AND WAIVER OF SUPERIOR RIGHTS.— Where the miner fails to adverse, and permits his adversary to secure a patent covering part of his location, he will be treated in law as having voluntarily waived his superior rights held by virtue of a prior and continued compliance with location statutes. .

5. EQUITABLE RELIEF AGAINST PATENT FRAUDULENTLY OBTAINED.— While great consideration is always given to the decision of the land department upon matters antecedent to patent, if the action of the department officer has been procured by fraudulent practices of one party upon the opposite party, courts of equity may grant relief.

6. IGNORANCE OF PATENT PROCEEDINGS, WHEN GROUND FOR RELIEF.— If by reason of the fraudulent conduct of the patentee the would-be

contestor, without fault on his part, is kept in ignorance of the pendency of patent proceedings, and is thus prevented from availing himself of the statutory remedy, a court of equity may interpose.

7. CONSTRUCTIVE TRUST IN FAVOR OF INJURED PARTY.— Such equitable proceeding is not for the purpose of annulling the patent. It presumes the validity of the patent but recognizes a constructive trust in favor of the injured party.

8. CONGRESSIONAL STATUTE OF 1881, CONSTRUCTION OF.— The congressional statute of 1881 relating to adverse suits operates to prevent the applicant for patent from procuring title without compliance with law, merely because the adversing party has failed to prove his ownership of a prior valid and subsisting location.

9. CHANGE OF BOUNDARIES IN AMENDED LOCATION CERTIFICATE.— The law permits a change of boundaries when amended location certificates are filed, provided the superior rights of others are not thus interfered with.

10. CONFIDENTIAL RELATIONS OF CO-OWNERS.— NOT EXTENDED TO OTHER PROPERTY.— The fact that defendant is a co-owner with plaintiff in other property, and is acting as confidential adviser in connection therewith, does not, in and of itself, render him liable at law or in equity for a failure to protect plaintiff's interest in the ground in controversy.

11. FRAUD OF FIDUCIARY REPRESENTATIVE.— One who is confidential adviser and agent in the management and sale of a mining claim cannot retain an interest therein, secured in fraud of the owner's rights.

12. EVIDENCE ERRONEOUSLY ADMITTED NOT CURED BY AMENDING PLEADINGS.— The amendment of pleadings during the progress of a trial is, in the exercise of a reasonable discretion, liberally allowed. Such amendments are sometimes permitted after verdict. But the error in admitting evidence upon a material question not in issue is not cured by a declaration in the decree, without the opposing party's acquiescence or consent, that the pleadings be considered so amended as to present the issue.

13. AMENDMENT OF COMPLAINT — CAUSE OF ACTION NOT CHANGED.— Where the complaint charges that defendant fraudulently kept plaintiff in ignorance of patent proceedings, whereby injury resulted, the pleading being amended by inserting the fact that defendant at the time occupied a trusted fiduciary relation with plaintiff in connection with the property, does not change the cause of action; the transaction relied on, the procedure invoked and the ultimate relief sought remaining precisely the same.

14. DEED TO BENEFICIARY OF TRUST ESTATE EXECUTED AFTER SUIT BROUGHT.— Where one is the beneficiary in good faith of a trust estate prior to the commencement of suit and filing of *lis pendens*,

and the parties instituting suit have notice of such interest, his rights are not affected, though the deed conveying the legal title to him be not executed till after suit is brought.

15. NECESSARY PARTIES TO SUIT WHEN FRAUD AND CONSPIRACY CHARGED.— But where conspiracy and fraud are asserted against a *cestui que trust* and his title is questioned, it is error to adjudicate his rights without making him a party to the suit.

### *Appeals from District Court of Lake County.*

BOTH of these appeals are from the same decree in the court below; by stipulation they are considered and determined together. In 1880, Mrs. Fisher and Nicholas Finn, trustee, etc., were the owners of the "American Flag," a mining location near Leadville; Messrs. Bloss, Ilginfritz and Herbert were likewise owners of a conflicting mining location known as the "Little Tiger;" Seymour and Mrs. Fisher were co-owners with other parties in the "General Shields," a mine adjacent to the foregoing properties. Some time during the summer of 1880, the latter parties met and conversed freely with reference to the "General Shields," having some talk also about the "American Flag," and in correspondence between them afterwards when Mrs. Fisher had returned to Tennessee, the "American Flag" was mentioned. Mrs. Fisher asserts that she made Seymour her agent to sell this claim; Seymour denies such agency.

In October, 1880, Bloss, Ilginfritz and Herbert made a contract in writing with Seymour whereby he was to patent the "Little Tiger" in his own name, and then deed one-half of the property to them. In pursuance of this contract an amended location certificate of the "Little Tiger" was filed changing the name to the "Tiger" and surveying in a large additional portion of the "American Flag."

Patent was obtained without the knowledge of Mrs. Fisher or Finn; and in 1881 they brought suit against Seymour for the purpose of having him declared a trustee holding title to that portion of the "American Flag" in-

cluded in the "Tiger" patent for them.  From the decree
in their favor as to half of the property Seymour appealed;
from the decree against them as to the other half of the
property, viz., that deeded to Bloss, Ilginfritz and Herbert,
in pursuance of Seymour's contract before patenting, they
appealed.  The remaining essential facts sufficiently appear
in the opinion.

Mr. S. D. Walling and Messrs. Rucker & Ewing, for ap-
pellant.

Messrs. Taylor & Ashton, for appellees.

Chief Justice Helm delivered the opinion of the court.

The complaint on which this cause was tried is framed
upon the theory of a constructive trust.  Relief is sought
on the ground that Seymour, who was defendant below,
holds the legal title (conveyed to him by patent) to a large
part of the "Tiger" lode in trust for the benefit of plaintiffs.

The leading question to be considered is: Did the failure
of plaintiffs to institute adverse proceedings in the land
office on behalf of the "American Flag" location, and to
contest by suit defendant's claim to a patent of the "Tiger"
lode, operate to waive or forfeit their prior prior rights in
the conflicting ground, if such rights they had?

I. The first contention of plaintiffs' counsel is that, re-
gardless of the statutes providing for adverse contests and
suits, and notwithstanding the failure of his clients to pro-
ceed thereunder, the single conceded fact of a valid and
subsisting location of the "American Flag" during the
"Tiger" patent proceedings is decisive of the present con-
troversy.  He asserts that the territory embraced in the
"American Flag" location was so segregated from the
public domain as to be absolutely protected from patent by
any other party, though plaintiffs made no effort to invoke
the benefit of the statutes mentioned.

No proposition connected with the disposal of mineral

land is more conclusively established than that such land, when held under a valid mining location, is no longer subject to exploration and entry. The locator thereof is entitled to the present exclusive possession and use as against all the world, including even the United States, which prior to patent retains the legal ownership. *Gwillim v. Donnellen,* 115 U. S. 45. A stranger going thereon for the purpose of discovering veins, of cutting and removing timber, or of otherwise interfering with the locator's possession and use, is a trespasser. The interest acquired by compliance with the mining statutes is, until a failure to perform annual labor or until abandonment in some other way, for most purposes, as valuable and effective as if the title had actually passed by patent. Such interest, in this state, is subject to taxation, and is liable to levy and sale under execution in satisfaction of the owner's debts. It has been designated by the supreme court of the United States a "grant" of the present exclusive right to possession. *Gwillim v. Donnellen, supra.*

The foregoing legal propositions lend support to counsel's contention; his able argument predicated thereon would possess great force were it not for the statutes relating to adverse proceedings. The different laws providing for the locating and patenting of mines are to be considered together; and the enactments giving the miner certain exclusive rights to mineral claims which he has located in compliance therewith must be construed in connection with the adverse provisions alluded to. It is a matter of such grave importance as to have become the settled policy of the general government that all controversies relating to conflicting mining claims be, so far as possible, adjudicated prior to patent. The statutes providing for adverse proceedings in the land office, and adverse suits in the courts, conclusively recognize this importance and express this policy. They do not deprive the locator of his interest, nor do they necessarily lessen its completeness and value. They simply point out a particular method by which

he is to assert his priority and maintain his advantage. The government being the paramount owner of the soil gives the prior claimant fair and adequate notice that he must assert his interest in a certain prescribed manner. If he does not avail himself of the proceedings thus provided for him, the superior advantages obtained by virtue of his priority of discovery and compliance with the location statutes may be lost. Failing to invoke the statutory remedy given, and permitting his adversary to secure a patent covering his location, or a part thereof, he will be treated in law as having voluntarily waived his prior and superior rights. *Lee v. Stahl*, 9 Colo. 208.

The existence of a valid and subsisting location of the " American Flag " at the time of the patenting of the " Tiger " lode, even if the priority of such location be conceded, did not *ipso facto* protect plaintiffs. The principal purpose of adverse proceedings is to determine just such controversies as arise upon conflicting claims of this kind. Plaintiffs' prior valid location, if such they had, did not exonerate them from the duty of invoking the remedy given by the adverse statutes.

II. The foregoing views proceed upon the theory that all requirements of patent statutes relating to notices have been fairly complied with. And where, therefore, if the complaining party has failed to avail himself of the statutory adverse provisions, the fault is chargeable to himself, or at least cannot be imputed to the patentee. But if, by reason of the fraudulent conduct of the patentee, the would-be contestor is kept in ignorance of the pendency of patent proceedings, and is thus prevented from availing himself of the statutory remedy, a court of equity may, in our judgment, interfere. Let it be carefully borne in mind that in this branch of the discussion we do not consider a case where there has been adverse proceedings and a contest before the land department; we refer to a case where such contest and hearing have been prevented by the fraud of the patentee, whereby the complaining party, without fault

on his part, is kept in ignorance of the application for title till the patent issues.

Great consideration is given to the decisions of the land department in all matters there passed upon antecedent to patent, and the necessity for instituting contest proceedings has been strenuously insisted upon. But we have authority fairly supporting the foregoing view concerning judicial cognizance of injuries arising from such frauds as the one mentioned. " In those cases (cases where conflicting claims between private parties involve the effect to be given to the determination of officers of the land department with reference to the public domain) it has indeed been held, as claimed, that if the executive officer has made a mistake of law in his administration; if he has exercised power without authority of law; if his determination has been procured by the *fraudulent practices of one party* upon the officer or *upon the opposite party;* or if the officer has himself fraudulently decided in favor of one and against the other, a court of justice will give effect to the rights of the parties as between themselves, notwithstanding the errors and the frauds alleged and shown. The principle is, ' that the decision of the officers of the land department made within the scope of their authority upon questions of this kind is in general conclusive everywhere except when reconsidered by way of appeal within that department; and that as to the facts on which their decision is based, in the absence of *fraud or mistake*, that decision is conclusive even in courts of justice when the title afterwards comes in question. *But that in this class of cases, as in all others, there exists in the courts of equity the jurisdiction to correct mistakes, to relieve against frauds and impositions.*' " *Craig v. Leitensdorfer*, 123 U. S. 189, and cases cited.

It is needless to say that an investigation by a court of equity in the case now supposed is not for the purpose of attacking or annulling the patent itself; its object is to give the benefit of the patent to the proper party; the party who in equity is entitled to the premises. And when

the foundation is laid by proof showing clearly the fraud of the applicant, whereby the complaining party has been kept in ignorance of the existence of the patent proceedings, the court may consider the right of such party to the ground in controversy.

The determination of the foregoing question is not controlled or affected by the congressional statute of March 3, 1881. The government being the owner of the soil requires as a prerequisite to the receiving of its bounty through patent the performance of certain acts and the expenditure of a certain sum of money upon each and every mining claim. Prior to the year 1881, in adverse suits, even where the applicant had not complied with these precedent requirements, he frequently secured title; for the adversing party, being plaintiff in the resulting suit, had the burden of the issue, and under the familiar rule in ejectment was required to recover on the strength of his own title, regardless of the weakness of that of his adversary. If he failed to establish a valid prior location, verdict and judgment went for defendant (the applicant); though the latter had not shown compliance with the law. To avoid this anomalous and illogical result the statute in question was adopted. By authorizing a verdict and judgment *in the adverse suit* that neither party has shown "title to the ground," it protects the United States from the evasion of these just conditions precedent to the grant. But upon issue of patent this statute has spent its force.

In chancery proceedings like that now before us the government is not a party; it is not asking that the court determine for it under the statute of 1881 whether either claimant is entitled to patent. The technical sufficiency of the patentee's location of his conflicting claim, and the sufficiency of his subsequent acts in connection therewith, are not necessarily involved. The questions tried are: Did the complaining party have a valid and subsisting location prior, and therefore superior, to that with which it conflicted and upon which the patent is based, and did the

fraud of the patentee keep him in ignorance of the patent proceedings? If these questions be affirmatively answered plaintiff may recover the ground in conflict. His suit in equity presupposes the proper passage of the title from its owner to the patentee, including the legality of the conveyance. He does not assert his right to the patent from the government; he accepts the instrument already given as in all respects sufficient to convey the legal title, but says: Owing to my superior interest in the premises, which entitles me to the exclusive possession and use even as against the United States, and owing to the fraud perpetrated upon me by the patentee, I occupy the *status* of a beneficial owner; my equitable rights are, under the law, superior to the naked legal rights of the patentee; if the government, the original owner of the paramount title, is dissatisfied with the proceedings whereby this title was divested, let the proper steps be taken to secure the annulment of the instrument; but so long as the government does not complain, I demand in equity a determination favorable to me of the private controversy between the patentee and myself. Equity must recognize his right and enforce his demand, or else, admitting its justice, must decline to notice the fraud and refuse relief.

The complaint in the case at bar substantially avers that plaintiffs were fraudulently kept in ignorance of the pendency of the patent proceedings until after the period for interposing objection in the land office had expired. The specific grounds upon which the alleged fraud is rested may be stated as follows: *First*, that in the amended location certificate, the surface boundaries of the "Little Tiger" were changed without the knowledge of plaintiffs, so as to include a much larger proportion of the "American Flag;" *second*, that in the patent notices posted and published, no mention was made of the adjoining claimants; *third*, that defendant Seymour was then a co-owner with plaintiffs in the "General Shields," an adjoining property, and was acting during the absence of plaintiffs as their confidential ad-

viser in connection therewith, and professing to protect their interests therein through feelings of kindness and friendship; and *fourth*, that in the amended location certificate and in the patent notices, the name of the original claim was changed from the "Little Tiger" to the "Tiger," the prefix "Little" being omitted.

Upon these averments we make the following observations: *First*, the law permits a change of boundaries when amended location certificates are filed; and if the superior rights of others are thus interfered with, such interference should be pointed out and relied upon in opposition to the trespasser's claim to a patent, if not before; this injury is as effectually waived by a failure to adverse as are prior conflicting rights where no change of surface boundaries has taken place; *second*, the provision requiring patent notices to mention the names of adjoining claimants appears only in the land office rules; it does not specifically exist in the statutes; but viewing the omission as an important defect, we need only advert to the fact that the abstract before us fails to disclose any proof received or offered, tending to show that the notices in question were imperfect in this particular; *third*, the fact that defendant was a co-owner with plaintiffs in other property, and was acting as their confidential adviser in connection therewith, furnishes no legal ground cognizable either in a court of law or equity for the complaint that he did not protect their interests in the "American Flag;" besides, it clearly appears from the evidence that plaintiffs were not both absent, and that defendant was not acting during any of the period mentioned as the confidential adviser of both; plaintiff Finn was in Leadville most, if not all, of the time, and he is not shown to have had any business relationship whatever with defendant; *fourth*, the omission of the prefix "Little," in the name of the lode patented, we do not think, in and of itself, is sufficient excuse for the alleged ignorance of plaintiffs; it appears that the "Little Tiger" was known and always spoken of as the "Tiger." The habit of omitting

the adjective prefix to the names of lodes seems to have been general in that mining district. The " American Flag," for instance, was known as the " Flag," and the " General Shields " is continually referred to by witnesses testifying at the trial on both sides as the " Shields." It does not appear that the description of the property was in any other way defective; the mining district, the locality, the reference to natural objects or permanent monuments, we are bound to assume were unobjectionable; one of the corners is described as corner No. 1–831 of the " General Shields." Neither the sufficiency of the posting of the plats and notices on the claim, and in the land office, nor the adequacy of the newspaper advertisements, is successfully challenged. We cannot say, nor did the jury or court find, that plaintiffs, including Finn, who was present in Leadville, were deceived by the change of name, and thus prevented from. instituting a proper contest by adverse proceedings.

III. But the questions submitted to the jury, together with the findings of the trial court, show that the decree against Seymour and in favor of plaintiffs is predicated largely upon a fiduciary relationship. The theory in this regard is, that Mrs. Fisher employed Seymour to act as her agent and confidential adviser as to the value and sale of the " American Flag; " that having accepted such agency, and while conferring and corresponding with her in relation thereto, he took advantage of her absence, and through her trust and confidence, coupled with his fraudulent conduct, kept her in ignorance of his intention and acts until a patent issued to himself covering a large part of the trust estate.

The existence of this fiduciary relationship is most strenuously denied by Seymour; and the evidence upon the subject is not as satisfactory as could be desired. But we do not propose to determine its sufficiency to support the findings and judgment, embarrassed as the investigation would be by the fact that our facilities for correctly weighing the credibility of witnesses are greatly inferior to those

possessed by the trial court. For the most careful scrutiny of the complaint upon which the cause was tried wholly fails to reveal any averment setting up, or tending to set up, the alleged agency. It would be an unwarranted assumption for us to hold that the allegation concerning defendant's co-ownership and agency *in the "Shields"* pleads, or was intended to plead, a similar fiduciary connection with the "American Flag."

The admission of the evidence bearing upon Seymour's agency as to the "American Flag," over his repeated objections, was, therefore, error. This error is not cured by the declaration in the decree that "plaintiffs herein be granted leave to amend their pleadings to correspond with the facts proved; and that the pleadings be and the same are hereby considered so amended." Under our system of procedure the amendment of pleadings during the progress of the trial is, in the exercise of a reasonable judicial discretion, liberally allowed. And sometimes such amendments are permitted after verdict. But in the first place, the manner of amending adopted in this instance, waiving considerations as to the lateness of the order, is hardly consistent with the method provided in the Civil Code. And secondly, such an important change as the one now under consideration should not, without acquiescence, be made for the first time in a final decree. Defendant Seymour did not consent to the alleged amendment by the decree, and we must presume that it operated as a surprise and hardship upon him.

IV. Prior to the commencement of the trial an amended complaint was tendered, setting up, among other things, the very agency in question. The court refused to permit the filing of this pleading, and the cause proceeded, as we have already seen, upon the original complaint. Thus, defendant was affirmatively apprised that this particular question would not be involved; he was deprived of the privilege of denying by answer, and thereby putting in issue this important allegation; he was thrown off his guard, and the

legal inference is that he did not prepare himself to meet the proofs offered by plaintiffs, which the court afterwards received as if the issue had been properly made.

It is needless to speculate at length concerning the particular ground upon which the court based his rejection of the amended complaint, or the motives that afterwards influenced him in receiving evidence upon the averments rejected. If his refusal in the premises was predicated upon the view that, by reason of their laches in waiting five years after beginning suit before tendering the amended complaint, plaintiffs were not entitled to a favorable exercise of judicial discretion, it is apparent from his order in the final decree concerning amendments that subsequent developments produced a change of mind in this regard. If, on the other hand, the ruling referred to rested upon the belief that the amended complaint pleaded a new cause of action, the court was wrong, and his subsequent conduct shows that he discovered his error. This pleading stated much more elaborately all that the original complaint contained, and it also covered a vast amount of surplusage in the way of purely evidential, instead of ultimate, facts; but we do not think that, at least as to Seymour, it necessarily averred a different cause of action.

"The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or wrong." Pomeroy, Rem. & Rem. Rights, sec. 453; Bliss, Code Pleading, sec. 113. Notwithstanding the seeming clearness of the foregoing definition, embarrassment is sometimes encountered under objections like the present. And our conclusion with regard to the pleading before us has not been reached without difficulty and misgiving.

Plaintiffs being the prior locators of a mining claim were entitled to the exclusive possession, and, upon compliance with law, to the ultimate, absolute ownership. It was Sey-

mour's duty, when applying for a patent covering a part of the "American Flag," not only to give the notices required by law, but also to refrain from acts intended or calculated to keep plaintiffs in ignorance of the patent proceedings. His alleged failure to perform this duty produced the wrong for which plaintiffs seek to recover. The alleged injury resulting from this wrong is that plaintiffs were kept in ignorance of the events transpiring, whereby they lost their property rights. The spoken language, written correspondence and acts of Seymour, it is claimed, were intended to and did prevent them from discovering the situation and protecting themselves. The fact, if it be a fact, that throughout the transaction Seymour occupied the position of a trusted agent in connection with the property, is an additional important element of bad faith on his part; it is a material fact, supplemental to the other facts constituting plaintiffs' primary right and defendant's corresponding duty; it introduces into the case a new element of fraud, and involves the application of a new equitable principle, but it does not so alter or supersede the original primary facts as to constitute a new cause of action. It is hardly necessary to add that the transaction relied on, the procedure invoked, and the ultimate relief sought, remain precisely the same.

V. The questions presented in the remaining case may be briefly disposed of. Before the decree was rendered in the court below Seymour conveyed the undivided one-half of the "Tiger" lode to Messrs. Bloss, Ilginfritz and Herbert; these parties were the original locators of the "Little Tiger," and it was with them he made the contract to procure a patent in pursuance of which contract the deed was executed. This contract constituted an express trust in their favor as to one-half of the property; and the trust estate thus created existed prior to the commencement of suit and filing of *lis pendens*. The deed executed after that date simply conveyed the legal title to property which these parties owned before being made aware by the com-

mencement of suit that plaintiffs asserted any interest in such property. It is not claimed that they occupied the position of agency towards plaintiffs. One theory, however, of the amended complaint as to them is, that knowing of Seymour's fiduciary relationship with plaintiffs, they conspired and confederated with him to keep plaintiffs ignorant of the patent proceedings, and, thus participating in his fraud, hold title also as trustees. The court below found that, as to the moiety conveyed to them, no trust existed.

Bloss, Ilginfritz and Herbert were not parties to the suit, though they would have become such had the amended complaint been filed. No issues were made by the pleadings as to them, and their rights were not before the court for consideration. Their title to one-half of the property, resting as it did upon an express trust, the foundation of which existed antecedent to the perpetration of the alleged wrong, would not necessarily depend upon the success or failure of Seymour.

It was clearly error to adjudicate the rights of these persons, either favorably or unfavorably, without making them parties and requiring appropriate pleadings. And even if it were true, as their counsel contend, that such adjudication could only have been predicated upon the introduction of a wholly new and different cause of action, it does not follow that for this reason the court was authorized to enter a decree in their favor. Through the absence of the proper parties and pleadings, plaintiffs may, as asserted by counsel, have been prevented from offering legitimate proofs tending to establish the necessary knowledge on the part of Bloss, Ilginfritz and Herbert, and their connection with the conspiracy whereby the alleged fraud was perpetrated.

The decree is reversed. Both causes will be remanded for such further proceedings as may be consistent with good practice and the views herein expressed. We offer no suggestions concerning the exercise of judicial discretion should application be made for leave to file an amended

complaint. As to Bloss, Ilginfritz and Herbert, our view is that if the attempt is made to adjudicate their rights, they should at least be made parties, and the trial should be had upon proper issues.

*Reversed.*