[No. 5298.]

The United States Fidelity and Guaranty Co.
v. The People.

1. **Administration—Lien of Claimants—Attorney's Bill—** The bill of an attorney for services rendered to the administrator is, under Mills' Stats., § 4780, a claim of the second class, and may properly be allowed by the county court against the estate; if paid by the administrator it may be allowed to him in his account. Such a bill is not required to be presented within one year of the granting of letters.—P. 561.

The order allowing the claim need not expressly direct payment by the administrator.—Pp. 564-571.

2. **Statutes—Adopted from Another State—**The enactment of a statute borrowed from another state impliedly adopts the construction thereof by the court of final resort of the state from which it is taken.—P. 571.

3. **Cases Overruled — Explained or Distinguished** — The statement of the opinion in Lusk v. Patterson, 2 Col. App. 306, that the statutory phrase "claims against the estate," applies only to debts of the decedent, and that it would be error to allow ˙as a debt against the estate a claim contracted in the course of administration; and the intimation to the same effect in Pastorius v. Davis, 9 Col. App. 428; Riner v. Husted, 13 Col. App. 526; and Currier v. Johnson, 19 Col. App. 248. Overruled. —P. 573. ·

4. **Pleadings—Amendments—**An amendment not changing the cause of action may be allowed in the discretion of the court at any time before final judgment, and even upon application made in vacation after the adjournment of the term at which the trial is had, and the amendment may be allowed even at the next term, as of the day of the trial.—P. 576.

5. **Pleadings — Pleading Judgments —** The complaint upon an administrator's bond for nonpayment of a claim against the estate averred that the claim was "duly adjudged by the court to be a claim of the second class * * * that said judgment was in all respects in due form of law." Held the phrases used were a substantial compliance with the provisions of the code, section 65.—P. 579.

*Appeal from Custer District Court.*
*Hon. M. S. Bailey, Judge.*

Mr. Andrew W. Gillette, for appellant.

Mr. John A. Gordon and Mr. V. H. Miller, for appellee.

This action was brought by relator Miller against appellant as surety upon an administrator's bond given by Malcolm G. Wright, and also against said Wright as principal in said bond. It was so brought under the statute whereby sureties upon such bonds are made liable for the failure of the principal to comply with law or with the covenants of the bond executed pursuant to law. Default was entered · against Wright and judgment was recovered against appellant as such surety. The same is now pending

before this court for review. The facts and circumstances more in detail may be stated as follows:

Relator Miller, who is an attorney at law, under employment by Wright, gave legal advice and otherwise assisted in the collection of claims and settlement of the estate. His bill for the services thus rendered was presented to the county court and upon investigation was allowed and judgment was entered thereon accordingly. The administrator refused to pay the same, although demand therefor was made upon him on two different occasions. And he left the state of Colorado without making such payment and without accounting to the court for the balance of moneys in his hands belonging to the estate; although he held sufficient funds to pay off all claims against the estate, including this one.

The present action on the administrator's bond came on for trial June 13, 1902, upon the amended complaint and separate answer of defendant company thereto. A motion by said defendant to exclude all testimony for the reason that the amended complaint failed to state a cause of action, was denied. The cause was then tried to the court, a jury being by stipulation expressly waived, and at its close the decision was taken under advisement.

Thereafter application was made for leave to amend the amended complaint; and on or about July 16, 1902, a formal written motion for such leave, strongly supported by affidavit, was presented to the judge at his request and also a brief upon the same. Among other things in the affidavit mentioned, it appears that this amendment was prepared with the intention of filing the same early in the December term, 1901; but that by reason of certain occurrences therein narrated, it was, by inadvertence, not filed, or if filed was mislaid by the clerk; and the matter

was overlooked until the close of the trial in June, 1902.

The court held this motion, together with its decision, under advisement until the opening of the next term. It granted the motion on December 11, 1902, ordering that the allowance thereof be recorded as of June 13, 1902, the date of the trial. Counsel not being present and the parties not being represented, the court, of its own motion, then continued the cause to the next regular term, June, 1903.

On April 25, 1903, plaintiff served notice on defendant's counsel of the allowance of said motion and also of the setting of the cause for trial at the June term following. This notice also recites that a copy of the original application for leave to amend the complaint was served on defendant's counsel at the time of the presentation to the judge of the court of the motion, and the affidavit and brief in support thereof.

On May 2d, following, plaintiff filed a second amended complaint containing the amendment so allowed, together with certain slight changes otherwise, which, in so far as the decision of the case is concerned, are immaterial. Defendant on June 9, 1903, moved to strike this amended complaint from the files upon several grounds, one of which was that the court had no power or authority to make the order granting permission to amend the same. This motion was denied.

On the same day, June 9, 1903, the cause again came on for trial upon the second amended complaint and defendant company's amended answer thereto. Defendant again renewed its motion to exclude all testimony under the second amended complaint, which motion was overruled. It was then ordered by the court, without objection, that the evidence theretofore taken should stand as evidence in the

cause, and the plaintiff proceeded with the introduction of some further testimony. Defendant introduced no testimony but interposed a motion for judgment in its favor, basing the same upon the grounds that the second amended complaint did not state a cause of action, and that the evidence failed to show liability of defendant under the terms of the bond, or that the administrator had sufficient assets to pay relator's claim. This motion was denied and judgment was entered for plaintiff.

The following provisions from Mills' Ann. Stats. are referred to in the opinion, viz.:

"Sec. 4780. All demands against the estate of any testator or intestate shall be divided into classes in manner following, to wit:

"First—All funeral and other expenses attending the last sickness shall compose the first class.

"Second—All expenses of proving the will and taking out letters testamentary or of administration and settlement of the estate, and the physician's bill in the last illness of the deceased, shall compose the second class.

"Third—Where any executor, administrator or guardian has received money, as such, his executor or administrator shall pay out of his estate the amount thus received and not accounted for, which shall compose the third class.

"Fourth—All other debts and demands of whatsoever kind, without regard to quality or dignity, which shall be exhibited within one year from the granting of letters, as aforesaid, shall compose the fourth class; provided, that wherever it may be necessary so to do, in order to preserve the estate, real or personal, for the benefit of the heirs, devisees and creditors, the executor or administrator may pay any taxes due thereon, to the state, or any city, county or town, and shall be allowed such payment in his

account; and all demands not exhibited within one year, as aforesaid, shall be forever barred, unless such creditor shall find other estate of the deceased not inventoried or accounted for by the executor or administrator; in which case his claim shall be paid *pro rata* out of such subsequently discovered estate.

"Sec. 4791. The county court shall class all demands allowed against any estate at the time of the allowance thereof, and such demands shall be paid in their order, commencing with the first class, and when the estate is insufficient to pay the whole of the demands, such demands in any one class shall be paid *pro rata* whether the same shall be due by judgment, writing obligatory, or otherwise, except in such cases as shall be herein excepted.   *   *   *

"Sec. 4795. Upon each and every settlement of the accounts of any executor or administrator, it shall be the duty of the court to ascertain the whole amount of moneys which shall have come into the hands of such executor or administrator, belonging to the estate of the deceased, and the whole amount of debts established against such estate, and if there be not sufficient to pay the whole of the debts, the moneys aforesaid, or such part thereof as the court may direct, shall be apportioned among the several creditors, *pro rata,* according to their several rights as established herein; and thereupon the court shall make an order directing such executor or administrator to pay out such moneys according to such apportionment, and the court, upon each and every settlement, shall proceed in like manner, until the whole debts be paid or the assets exhausted;   *   *   *

"Sec. 4807. All bonds which may at any time be given by any executor or administrator, either with or without the will annexed, or *de bonis non,* to collect, or public administrator, may be put in suit and prosecuted against all or any one or more of the

obligors named therein, in the name of the people of the state of Colorado, for the use of any person or persons who may have been injured by reason of the neglect or improper conduct of any such executor or administrator as aforesaid, and such bond shall not become void on the recovery thereon, but may be sued upon, from time to time, until the whole penalty shall be recovered;    *    *    *

"Sec. 4808. If any executor or administrator shall fail to comply with the provisions of this chapter, or shall fail to comply with any or all of the covenants in his bond, an action may be forthwith instituted upon such bond, and the failure aforesaid shall be sufficient breach to authorize a recovery, in the same manner as though a *devastavit* had been previously established against such executor or administrator."

Mr. Justice Helm delivered the opinion of the court:

The most important objection urged in this case challenges the jurisdiction of the county court to allow as a claim against the estate, the demand of relator for legal services; such services being rendered to the administrator in due course of administration. The employment, rendition of the services, and reasonableness of the allowance are not in controversy. The specific contention is that relator's demand could only be collected through the administrator. That is to say, that it was a claim against the administrator and not against the estate; and that he should have looked solely to the administrator, leaving that official to seek reimbursement from the estate through subsequent proceedings in court.

Were the matter one of first impression in this state and elsewhere; little difficulty would be encountered in its decision. But there are two lines of

authorities and a marked divergence of opinion, respectively upholding and denying the jurisdiction in question. This divergence of opinion is accounted for, in part, by differences in the various statutory enactments on the subject. And by observance of this fact a large part of the seeming conflict will disappear.

Many decisions limit claims against the estate of a deceased person to debts or obligations contracted by the deceased himself; or to liabilities resulting from contracts made or obligations incurred by him in his lifetime. As to expenses, arising in connection with the administration and settlement of the estate, these cases hold that they constitute claims against the executor or administrator individually, and not claims against the estate itself; and that such demands or expenses must be paid by the executor or administrator and then reported by him to the probate court; which court may allow the same or such portions thereof, if any, as it shall deem reasonable and proper.

But, in this state, we cannot accept the distinction thus made. Whatever may be the ground given for its adoption elsewhere, no room is left for its recognition here. Our statute, § 4780, Mills' Ann. Stats., puts this matter beyond question. It first declares that "all demands *against the estate* of any testator or intestate shall be divided" into four classes. Of these four classes, save as to the physician's bill and expenses in the last illness, only the third and fourth could by any possibility be construed as referring to debts or obligations created by deceased in his lifetime. The first two classes, with the exception noted, apply exclusively to expenses accruing subsequently. Moreover, the second class expressly includes "all expenses of proving the will

and taking out letters testamentary or of administration and settlement of the estate.''

Hence, we repeat, whatever the law may be elsewhere, the status of expenses accruing after the death of testator or intestate and in connection with the administration and settlement of the estate, is here, by law, absolutely fixed; such expenses are undoubtedly covered by the statutory classification of demands ''against the estate''; and no ingenuity or skill in argument could demonstrate the contrary.

But if the foregoing conclusion be correct it naturally follows that, unless some other statutory provision forbids, claims or demands arising through the administration and settlement of estates may be presented directly to the county court and allowed and ordered paid to the claimant in the ordinary course of administration. That court is by our constitution clothed with ''original jurisdiction in all matters of probate, settlement of estates of deceased persons,'' etc.; and by statute it is made a court of general jurisdiction and vested with unlimited control over ''all questions of law and fact relating to probate matters.'' It has plenary power to guard all assets and adjudicate all alleged liabilities during the process of administration. And no doubt can arise as to the scope of its authority in dealing with claims or demands against the estate of deceased persons; whether such claims be contracted by them during life, or arise from materials furnished or services performed in connection with the administration and settlement of the estate, after death.

It is not disputed that the claim of relator in the case at bar was a *bona fide* obligation incurred by the administrator in connection with the settlement of this estate. And unless, as already observed, some other legislative provision affects the question, we would not feel warranted, even were this a direct at-

tack upon the judgment, which it is not, in holding either that the county court had no jurisdiction to allow the claim as it did, or that its action in so doing was error.

But counsel for appellant invites our attention to § 4805, Mills' Ann. Stats. This section, he contends, so qualifies the provision above considered, that such demands as the one here involved can only be presented to or recognized by the court, through the administrator; that is to say, such claims must, by virtue of section 4805, be brought before the court as items in the account of the administrator and, if approved, they must be allowed and paid to him and not to the person rendering the services for which they are charged.

It becomes necessary, therefore, to carefully examine this statute. It reads as follows:

"Executors and administrators shall be allowed, as a compensation for their trouble, a sum not exceeding six per cent. on the whole amount of personal estate, and not exceeding three per cent. on the money arising from the sale or letting of land, *with such additional allowances for costs and charges in collecting and defending the claims of the estate, and disposing of the same, as shall be reasonable, to be allowed and paid as other expenses of administration.*"

We observe in the first place, that the portion of this section now involved and italicized by us, simply declares in statutory form the authority which was inherent in the court and would have existed as one of its equity powers without the statute. It has long been the rule in equity that when an administrator or executor employs and pays persons for services in connection with the estate, such for instance, as those rendered in the case at bar, he is entitled to reimbursement from the estate therefor through an order

of court; provided the services be proper and the amount so charged be reasonable.—Williams on Executors (6th Am. ed. 1877), p. 1971; *Barker v. Kunkel,* 10 Ill. App. 409.

This statute is not intended, as counsel seems to think, to be exclusive, and to include all expenses incurred by the administrator in the settlement of the estate.   It is simply designed to cover those instances where the executor or administrator makes advances from his own funds upon the expenses referred to, or makes himself individually liable therefor independent of his official character.   It does not include claims or demands for services that may be rendered to the estate through employment by the administrator purely in his official capacity, and which he has not personally secured or discharged.

Manifesting the correctness of this view is the fact that the provision is expressly limited to a single class of administration expenses, viz.: "costs and charges in collecting and defending the claims of the estate and disposing of the same"; the purview is restricted to the subject of claims alone.   And the words "costs and charges" may also be significant; they may be broad enough to include such items as attorney's fees; but their more natural and ordinary purport would embrace witness fees, court costs and only such other expenses as must generally be advanced promptly, from time to time as they accrue. Many other expenses there are that could by no reasonable interpretation be covered by section 4805. This distinction is emphasized in the closing declaration of the statute itself, viz.: "to be allowed and paid as *other* expenses of administration."

The construction of the law contended for by counsel, and announced by some authorities, leads logically to certain results, which, as at present advised, and in view of section 4780 aforesaid, we are

not prepared to accept and incorporate into the juris-
prudence of this state. For instance, it logically fol-
lows from that view that the administrator would not
be entitled to insert a claim of this kind into his
report and ask the court for an allowance thereof to
him, unless he had actually advanced the money and
paid in full the person rendering the services. And
so say the authorities:

"It seems also to be settled that an executor will
not be allowed counsel fees or for other services
rendered at his own instance unless he has paid them.
—Williams on Executors, p. 1860, and notes; *For-
ward v. Forward,* 6 Allen 494; *Modawell v. Holmes,*
40 Ala. 391."—*Barker v. Kunkel,* 10 Ill. App. 409.

And it necessarily follows as a corollary that the
administrator in making such advances does so at
his personal risk. He incurs the hazard that the
court in passing upon his account therefor may hold
the services unnecessary or the amount charged ex-
cessive:

"The decisions are uniform that a guardian,
executor, administrator or other person acting in
*autre droit* is personally responsible to an attorney
employed by him professionally in the execution of
his duty, and not the estate or fund under his care.
Nor is this liability in any manner dependent upon
the allowance or disallowance by the probate court
of the claim of the executor for reimbursement for
the money so paid by him. That is a matter wholly
between the executor and the court."—*Barker v.
Kunkel, supra,* 412.

The last foregoing considerations necessarily
foreshadow certain other consequences that cannot
be ignored. The administrator must be possessed of
sufficient resources or funds to make advancements
for attorney's fees and other expenses incurred by
him, or his standing and credit must be such that

agents and employees will be willing to depend upon him alone, without reliance upon the estate.   Again, the administrator must himself be willing to incur the risk of a disapproval of his accounts by the court, in whole or in part, and a refusal to reimburse him from the estate for administration expenses.   Thus a strict adherence to the view urged upon us might render it extremely difficult to secure the services of desirable administrators; and in many instances such adherence would virtually disqualify executors from acting, although solemnly chosen by the deceased and designated in his will.

On the other hand, the attorney or other person selected might refuse to accept the engagement and render the services required, if he is not allowed to look to the estate for compensation.   A rigid application of this rule might place him in a precarious position.   The administrator after receiving the services might refuse to recognize a claim for compensation, and a suit against him personally might be unavailing; or the administrator might abscond and leave the claim wholly undischarged.   The claimant, being unable to hold the estate, is relegated to an action against the surety upon the administrator's official bond; which action, even when it will lie, is often a doubtful and unsatisfactory remedy.

We are not unaware of the fact that some of the cases which adhere to the rule urged, attempt to avoid its objectionable consequences by recognizing exceptions and holding that under certain circumstances the injured claimant may look to the estate. But the exceptions thus carved out only serve to emphasize more strongly the unreasonableness of the rule, besides demonstrating that the matter involved is not jurisdictional.   And if all the cases of injustice or hardship were covered by such exceptions,

the rule itself would, to say the least, be seriously impaired.

The suggestion sometimes made that this rule is necessary as a check upon fraud, is not tenable. Collusion between the administrator and claimant could take place quite as readily whether the claim be allowed against the estate and directly to the claimant, or be paid through the administrator. It is the imperative duty of the county court to carefully examine and investigate all demands for expenses in the settlement of estates, and as we have seen, that .court has plenary authority to reject such demands in whole or in part, regardless of the manner of their presentation; its decision being subject to reconsideration, appeal, or review as provided by law. And its facilities for the detection of fraud and the weeding out of fictitious demands are as full and effective when such demands are presented by the claimant as when they are exhibited by the administrator.

In this connection it is proper for us to invoke a well-known principle of statutory interpretation, that is clearly applicable. Sections 4780 and 4805 above considered, were borrowed verbatim from Illinois. Prior to their adoption in Colorado they had received construction by the supreme court of Illinois. With these provisions in full force, the law there was thus stated by Chief Justice Treat:

"The services were performed for the estate and not for Mrs. Ross personally. The estate received the benefit of the services and ought to make the proper compensation. The appellee was employed on behalf of the estate and had the right to look to the estate for payment. The fact that he was retained by the executrix makes no difference. Her acts rightfully done in her official character are binding on the estate."—*Greene v. Grimshaw,* 11 Ill. 391.

The services so referred to were rendered by an attorney in connection with the settlement of an estate; and the court upheld his right to look to the estate for payment, notwithstanding the fact that he was retained by the executrix and performed the services under her direction.

The rule of interpretation we invoke is, that, subject to certain qualifications which need not be here enumerated, when a statute is thus borrowed from a sister state the construction previously put upon such statute by the highest court of that state is likewise adopted by the legislature borrowing the provision.

The statute of Illinois corresponding to our section 4780 seems to have since been repealed or modified. And in *Johnson v. Leman,* 131 Ill. 613, the rule is announced that in general, persons employed by a trustee must look solely to him for compensation. But *Greene v. Grimshaw* is considered and distinguished, the ground of such distinction being the previous existence and effect of this statute. Speaking of that case the Illinois supreme court says:

"The statute then in force provided that expenses of the settlement of the estate should be allowed against the estate in the second class."

And a fair inference from this and other language there employed is, that with this statute still in force, the view of the Greene case, resting upon it, would have been sanctioned and reaffirmed in *Johnson v. Leman.*

Subsequent to the enactment of these statutes in Colorado, and intervening between the Greene and Johnson cases, the court of appeals of Illinois saw fit to give the law in that state a different interpretation. —*Barker v. Kunkel,* 10 Ill. App., *supra. Greene v. Grimshaw* is there also referred to and distinguished. The court of appeals, however, follows such attempted

distinction with the remark that, "moreover it is manifest from reading the opinion of Treat, C. J., that the question of direct liability of the estate to the attorney was very imperfectly considered."

But with due deference to the learned court making this criticism, we feel constrained to accept the view expressed in the earlier case by the· higher tribunal and subsequently referred· to approvingly by the same tribunal.  In fact, as already suggested, we do not see how a different interpretation could be given to the statutes above considered.  There is here certainly no excuse for not recognizing the rule relating to borrowed statutes and, therefore, rejecting the subsequent interpretation by the Illinois court of appeals.

In deciding this branch of the case, we simply hold that under the Colorado statutes referred to which still exist in substantially the same form, the estate is primarily liable for a reasonable expense lawfully incurred in the administration and settlement thereof.  And that the county court has jurisdiction to allow directly to the claimant his demand therefor and order the administrator to pay the same; observing, of course, the statutory classification and requirements in so doing.  Our view is that in contracting for or incurring such expenses the administrator acts for the estate; that he acts in his official and not in his private or individual capacity. And this is true whether that official appeals to the court for its sanction before incurring the liability, or takes the hazard of its subsequent approval.

We do not hold that such expenses may not be liquidated by allowance to the administrator. Where he actually advances the same, this course is necessary.  And where the administrator and claimant, by contract or otherwise, agree as to the amount of the claim and the latter is willing, there is no

reason why it may not be included in the former's report, and allowed to him. The practice of allowing claims for these expenses to the administrator, is often convenient and desirable. It has been frequently followed in this state, and what we have said is not intended to discourage its continuance whenever adequate and practicable.

An extended review of the authorities upon this question would only lengthen the present opinion without serving any equivalent purpose. But as certain decisions by our court of appeals are regarded by the parties as pertinent to the discussion, they will be briefly considered.

The case of *Lusk v. Patterson,* 2 Col. App. 306, is strongly relied on by counsel for appellant. The original claim there in controversy accrued nine years after the death of the intestate and through a contract made by his administratrix. Notwithstanding this fact, the county court allowed it as a demand of the *fourth* class and entered judgment accordingly. The court of appeals was clearly right in holding that this was error; our statutory demands of the fourth class are limited to debts contracted by the deceased, or resulting from obligations incurred by him in his lifetime.

But the declaration of that court in argument, that the statutory phrase "claims against the estate" applies only to debts of the decedent and that it would be error for the county court to allow as a debt against the estate any claim contracted in the course of administration, is, as we have seen, inconsistent with the clear purport of section 4780. And this suggestion is also true of the similar intimation made in *Pastorius v. Davis,* 9 Col. App. 428, and the denial of the county court's jurisdiction, in *Riner v. Husted,* 13 Col. App. 526, and *Currier v. Johnson,* 19 Col. App. 248.

On the contrary, the same court in *Fleming v. Kelly,* 18 Col. App. 28, adopted the view that a claim arising in due course of administration might be a claim against the estate.  In that case an order of the county court allowed the administratrix to continue the business of her husband pending settlement of the estate.  The demand in controversy was for goods purchased by her in so doing.  The case of *Lusk v. Patterson* is carefully considered and the declaration therein, above mentioned, is qualified. Such qualification rests upon the fact that the particular contract involved in *Fleming v. Kelly* was made and obligation incurred by the administratrix, pursuant to authority of the county court *previously given.*  But if the county court can authorize the administrator to incur a debt in connection with the administration, and then adjudge such debt to be a claim directly against the estate, it assuredly has jurisdiction under section 4780 to hold a similar obligation incurred without its prior authority, also a debt against the estate.  And it follows therefore, that the case of *Fleming v. Kelly* is in harmony with the interpretation of the law herein adopted.

In view of the foregoing conclusion upholding the jurisdiction of the county court to allow expenses of administration directly to the claimant, as claims against the estate, it is obviously unnecessary to consider whether appellants' objection to the judgment sanctioning relator's claim constituted a collateral attack thereon; that is to say, whether in this action against the surety upon the administrator's bond the validity of relator's original judgment in the county court can be challenged.  In holding that the original allowance of the claim was legal and regular, we necessarily hold that the judgment based upon such allowance is impervious to this kind of attack.

Certain other questions are presented and ear-

nestly urged as grounds for reversal of the judgment below. It is claimed that the second amended complaint, upon which the case was finally tried, does not state a cause of action.

One of the defects charged against this complaint is that it fails to allege the filing for allowance with the county court of relator's claim within one year after the issue of letters of administration. By reference to section 4780, aforesaid, it will be seen that the provision requiring claims to be filed within this period only applies to the "other debts and demands" specified in the *fourth* subdivision thereof. And hence this averment, if essential, is limited to those debts or demands which were incurred by decedent in his lifetime. But the claim here in controversy arose, as we have seen, in connection with the settlement of the estate, and was, therefore, properly classified with claims of the second class. Moreover, even if the provision requiring demands to be exhibited within a year from the granting of letters were not expressly limited to the fourth class, yet it could not have been the legislative intent that the same should apply to claims incurred during the process of administration; for in many instances the services would not be rendered and the expenses incurred till long after the expiration of that period.

It is also objected that this complaint omits to aver the entry by the county court of an order for the distribution of the funds among claimants and the failure of the administrator to obey such order. No such averment was necessary in the present case. The judgment itself is full and complete against the administrator. And a special order directing that officer to pay the same was not necessary. Such separate order is usually made upon exhibition of the administrator's accounts for settlement, and is then only required when there are not sufficient as-

sets or funds to pay the whole of the debts established against the estate. But in this case the existence of such sufficient fund is shown both by allegation and proof.

Another defect pointed out on behalf of appellant is that the second amended complaint does not allege that the estate had sufficient assets or funds to pay all the claims, including that of relator. Assuming that such an allegation is important, this objection must also be denied. The amendment incorporated by order of court on December 11, 1902, fully supplied the missing averment.

The allowing of this amendment is the basis of another challenge and is strenuously insisted upon as error. The specific criticism in this connection is that the motion to amend came too late. It is admitted that the amendment might have been allowed during the trial. But the power of the court to do so after the trial was concluded, is denied.

The rulings in this cause as to both pleadings and procedure were liberal. But such liberality is accounted for in part by the fact that only two terms of court per year were held in Custer county, and each of those terms was usually of very short duration. It was, therefore, important for the court to exercise as much latitude as possible out of term time in matters pertaining to preparation for trial, particularly to the making up of issues.

The amendment of the complaint attacked in this case did not operate to change the cause of action. It only served to render more complete the statement of the cause of action originally pleaded and always relied on. Such amendments are liberally allowed in the interest of justice. The court of appeals of this state discussing the subject employs the following language:

"The granting of leave to amend is within the sound discretion of the court, which should be liberally exercised in the interest of justice, and unless in consequence of its exercise some disadvantage has resulted to the adverse party, the decision is no ground for reversal."—*Davis v. Johnson*, 4 Col. App. 551.

No particular period in the progress of the trial is fixed at which the pleadings cease to be amendable. And amendments similar to the one now under consideration may, under proper circumstances, be permitted at any time before final judgment. Such was the rule at the common law and the code procedure has certainly introduced no restrictions. This court has declared:

"Under our system of procedure the amendment of pleadings during the progress of the trial is, in the exercise of a reasonable judicial discretion, liberally allowed. And sometimes such amendments are permitted after verdict."—*Seymour v. Fisher*, 16 Colo. 199.

"At common law the court has power to allow an amendment of the pleadings in a case until final judgment; and authority is given by statute in most of the states to allow amendments after as well as before judgment by the insertion of new allegations material to the case."—1 Enc. Pl. & Pr. 605.

The amendment here challenged simply introduced into the amended complaint the words "and which sum of $301.23 is sufficient to pay all debts including all costs of administration"; it was tendered for the purpose of meeting an objection offered by defendant; the application to amend was made after the evidence of plaintiff had closed, defendant offering none, and after the court had adjourned the term, taking his decision under advisement; it is stated in a subsequent notice that notice of the application was

served upon defendant; the motion was supported by a strong affidavit showing persuasive grounds in its favor; the court held the decision and this application to amend, in abeyance until the opening of the succeeding term, when the amendment was allowed *nunc pro tunc* as of the date of trial; the parties not being present, the cause was continued until the next succeeding term of court, and notice of the order permitting the amendment and granting the continuance was duly served upon defendant; the cause came on for further hearing pursuant to such continuance, the evidence previously introduced being, without objection, allowed to stand, and plaintiff offering some additional testimony; defendant tendered no proofs and the judgment, now under review, resulted.

In allowing this amendment the court undoubtedly exercised a very broad discretion. He did not impose terms, and there was some delay and a little added expense. But it does not appear that defendant suffered material prejudice thereby; it was given opportunity to appear and resist the application; and when the same was allowed a continuance to the next succeeding term of court was ordered, although defendant was not present or represented and preferred no request in the premises; it was duly notified of the granting of the amendment and of the continuance; the cause was then reopened and defendant was given ample time and opportunity to make any changes in its answer desired, and to prepare and present any proofs made necessary by the amendment. Under the circumstances we cannot say there was such an abuse of discretion, as requires a reversal of the judgment.

But one further objection is deemed worthy of consideration; it questions the manner of pleading the judgment of the county court in the second amended complaint. The allegation thus excepted

to, after stating the rendition of the services by relator and the amount of his claim therefor, proceeds as follows:

"That said administrator was duly notified of the same and that thereafter the said claim was duly adjudged by said court to be a claim of the second class against the said estate and justly due to plaintiff, and the said administrator was by the judgment of said court duly required to pay the same in the regular administration of said estate. That the said judgment so rendered by said court was in all respects in due form of law and is now in full force and effect."

It is urged that this allegation should have contained the date of the judgment or at least the term of court at which it was rendered; also that the word "adjudged" so employed is insufficient compliance with section 65 of the Civil Code. Referring to the latter criticism; the code permits judgments to be pleaded by simply declaring that the same were "duly given or made," without stating the facts conferring jurisdiction. The pleader in this instance uses the phrase "duly adjudged" and he also avers that the judgment was rendered "in due form of law." These phrases fully cover the statutory language. A matter could not be "duly adjudged" and such judgment be entered "in due form of law," without the same having been "duly given or made."

Referring to the other criticism we suggest: that in the first place, the date of this judgment was proven, without objection, at the trial; and, secondly, that while it is proper in pleading a judgment to allege the date thereof or the term of court at which it was rendered, yet it is not always necessary to do so. No issue was made or question raised in the present case rendering the allegation of the date of this judgment important or essential.

But it is sufficient to say with reference to both of these particular strictures that they do not go to the sufficiency of the complaint in stating a cause of action. And that as that pleading was not challenged by demurrer, they must be regarded as having been waived.

The opinion heretofore filed will be withdrawn, and the judgment' of the court below will be affirmed.

Decision *en banc.*                *Affirmed.*